(March 15, 1909.)

## PORTNEUF IRRIGATING COMPANY, LTD., a Corporation, Plaintiff, v. ALFRED BUDGE, Judge, Defendant.

[100 Pac. 1046.]

Eminent Domain—Sovereign Power of Eminent Domain—Constitutional Limitations of Right—Constitutionality of Statute—Compensation for Taking—Due Process of Law—Right to Jury Trial—Mode of Assessing Damages—Necessity for Taking.

1. Under the provisions of sec. 14, art. 1 of the constitution of Idaho, which provides that "private property may be taken for public use, but not until a just compensation to be ascertained in a manner prescribed by law shall be paid therefor," the legislature had the power and authority to enact sec. 5226, Rev. Codes, and provide for assessing the damages sustained by any land owner by three commissioners to be appointed by the court. A tender of the amount so assessed to the land owner, or in case of his refusal to accept the same, a payment thereof into court to await the determination of the action, is sufficient compliance with the constitutional requirements as to payment in advance of the taking to justify and authorize the court in letting the party seeking to condemn into possession of the property.

2. Sec. 7, art. 1 of the constitution, which provides that "the right of trial by jury shall remain inviolate," has reference to the right of jury trial as the same existed at the time of the adoption of the constitution, and therefore does not guarantee to the citizen the right of trial by jury in condemnation proceedings in the exercise of the right of eminent domain pursuant to the provisions of sec. 14, art. 1 of the constitution.

3. At the time of the adoption of the constitution of Idaho, the exercise of the right of eminent domain was recognized and existed as a "special proceeding of a civil nature," and was not classed or recognized as an action at law.

4. At common law, a proceeding for condemnation of property to a public use was inquisitorial and *ex parte*, and was instituted at the instance of the sovereign, and the fixing or assessing damages to be paid for the taking was merely for the purpose of satisfying the sovereign conscience, and a trial by jury was not recognized in such proceedings.

5. It is the uniform ruling of the American courts that the right of trial by jury in proceedings for condemnation of property to a public use does not exist as a constitutional right unless the con-

stitution itself contains a specific grant and guaranty of such right.

6. Primarily, the power to exercise the right of eminent domain for and on behalf of the state rests with the legislature, and the constitutional provision with reference to the exercise of that power (sec. 14, art. 1) is a limitation and not a grant of power. The legislature may determine the necessity for the taking, and its determination thereon is final. The legislature of this state has delegated the power to determine the necessity for the taking to the courts, and jurisdiction is thereby vested in the courts to pass upon, determine and adjudicate all the matters and things specified by the statute to be determined before the taking is finally consummated and title devested.

7. The provisions of sec. 5226 for the appointment of commissioners to assess damages that the defendant will sustain by reason of the condemnation and appropriation of his property, and for the payment of the sum so assessed to the defendant, or, in case of his refusal to accept the same, its being paid into court to abide the result of the action, and for the plaintiff thereupon to enter upon and take possession of the property pending the final hearing and determination of the proceeding, are not in conflict with either section 7 or sec. 14 of art. 1 of the constitution.

8. The fact that the statute grants to a defendant in condemnation proceedings the right to a trial subsequent to the assessment made by the commissioners, and also the right of appeal, does not render the provision of the statute, authorizing the appointment of the commissioners and assessment of damages and the taking of possession after payment of the amount so assessed, obnoxious to the constitution.

9. The damages to be assessed for the taking of property in condemnation proceedings is fixed by the statute (sec. 5221) as of the date of the issuance of the summons, and if the damages so assessed are paid to the land owner, the fact that the plaintiff in condemnation may subsequently commit waste or damage on the lands so condemned, and may not prosecute the proceeding to final judgment, can in no way prejudice the land owner whose damages are assessed as of a previous date.

10. The question as to the necessity for the taking of a definite piece of property for a public use, when denied, should be determined by the court *in limine* before appointing commissioners to assess the damages that will be sustained by reason of the taking.

11. Where it is sought by condemnation proceedings to take a piece of property that is already devoted to a public use, the necessity will not be measured by the extent to which the use is actually applied, but rather to the public nature and character of the use to which it has been previously applied.

12. Under the constitution and statutes of this state irrigating canals are declared to be a public use.

13. Where the necessity for the taking is shown, one canal company will be allowed to condemn a part of the right of way of another canal company, for the purpose of enlarging the old canal to a sufficient capacity to carry such additional volume of water as may be needed for the use of the latter company.

(Syllabus by the court.)

Original application for a writ of prohibition. Demurrer to the petition sustained, *writ denied* and proceeding dismissed.

Clark & Budge, for Plaintiff.

The taking of the possession of property pending the action is a "taking" within the meaning of sec. 14, art. 1 of the constitution. (Authorities cited in opinion.) Under the above provision of the constitution, compensation *must be paid* before a "taking" is authorized. (15 Cyc. 776; *Carrico v. Colvin,* 92 Ky. 342, 17 S. W. 854; *Martin v. Tyler,* 4 N. D. 278, 60 N. W. 392, 25 L. R. A. 838; *Oregonian R. R. Co. v. Hill,* 9 Or. 377; *Pratt v. Roseland R. Co.,* 50 N. J. Eq. 150, 24 Atl. 1027; *Stolze v. Milwaukee etc. R. Co.,* 104 Wis. 47, 80 N. W. 68.)

Inasmuch as sec. 5226 makes no provision for the payment of damages sustained by the defendant by reason of the plaintiff's possession pending the proceedings to condemn, in the event that the plaintiff does not take the property, said section is in violation of the constitutional provision, and is void. (*Davis v. San Lorenzo R. R. Co.,* 47 Cal. 517; *Steinhart v. Superior Court,* 137 Cal. 575, 92 Am. St. 183, 70 Pac. 629, 59 L. R. A. 404.)

Under the authorities above cited, the compensation must be paid in advance, and it is not sufficient to say that the defendant, if his land be not taken, would have an action for damages. (See *Sanborne v. Belden,* 51 Cal. 266.)

The necessity for the taking of property, as well as the fact that the use sought to be made of it, is a more necessary public use than that to which it is now devoted, must be made

to appear, and be determined by the court, before it has juris-
diction to proceed to have compensation assessed.  (15 Cyc.
814, 815; *Cleveland etc. R. R. Co. v. Ohio etc. Cable Co.*, 68
Ohio St. 306, 67 N. E. 890; 62 L. R. A. 941; *Barrett v. Kemp*,
91 Ia. 296, 59 N. W. 76; *Manistee etc. R. Co. v. Fowler*, 73
Mich. 217, 41 N. W. 261; Lewis on Eminent Domain, 2d ed.,
secs. 338, 393; *Hubbard v. Great Falls Mfg. Co.*, 80 Me. 39,
12 Atl. 878; *O'Hare v. Chicago etc. R. Co.*, 139 Ill. 151, 28 N.
E. 923; *Sand Creek etc. Irr. Co. v. Davis*, 17 Colo. 326, 29 Pac.
742.)

Whether land sought to be condemned is necessary, or
whether the proposed use would be inconsistent with or sub-
versive of a prior public use, are questions for judicial de-
termination.  (15 Cyc. 580; *In re St. Paul etc. R. Co.*, 34
Minn. 227, 25 N. W. 345.)

Edwin Snow, for Defendant.

"In the absence of a constitutional provision forbidding it,
the legislature may provide that the compensation may be as-
sessed by commissioners or arbitrators."  (15 Cyc. 883, and
cases cited; *Kansas City Belt Ry. Co. v. Kansas City etc. Ry.
Co.*, 118 Mo. 599, 24 S. W. 478; *Butte etc. Ry. Co. v. Montana
Union Ry. Co.*, 16 Mont. 504, 50 Am. St. 508, 41 Pac. 232, 31
L. R. A. 298; *Doughty v. Somerville*, 21 N. J. L. 442; *Ross v.
Elizabethtown Ry. Co.*, 20 N. J. L. 230; *Austin v. Helms*, 65
N. C. 560; *Sullivan v. Missouri Ry. Co.*, 29 Tex. Civ. App.
429, 68 S. W. 745.)

"In the absence of a special constitutional or statutory pro-
vision there is no right to trial by jury in condemnation pro-
ceedings."  (15 Cyc. 873; *Koppikus v. State Capitol Commrs.*,
16 Cal. 249; *Bruggerman v. True*, 25 Minn. 123; *People v.
Smith*, 21 N. Y. 595; *Chowan Ry. Co. v. Parker*, 105 N. C.
246, 11 S. E. 328; *Penn. R. Co. v. German Lutheran Cong.*,
53 Pa. 445; *Houston Tap. Ry. Co. v. Milburn*, 34 Tex. 224;
*Postal Tel. Co. v. So. Ry. Co.*, 122 Fed. 156; 18 Cent. Dig.,
tit. "Eminent Domain," sec. 545; *Kramer v. Cleveland Ry.
Co.*, 5 Ohio St. 140; *State v. City of Oshkosh*, 84 Wis. 548,

54 N. W. 1095; *Central Branch Union Pac. R. Co. v. Atchison, T. & S. F. R. Co.*, 28 Kan. 453.)

All the constitutional guaranties of the defendant in the condemnation suit have been protected by the submission of the question of damages to the commissioners appointed under sec. 5226, and the payment of the compensation assessed by such commissioners. The subsequent right to a trial by jury is simply an additional privilege. The statute can grant that privilege on terms. One of the terms is the loss of the temporary occupancy of the land. (15 Cyc. 874.) We cite the following cases under statutes of other states where provision is made for the possession of the property by the plaintiff pending the final conclusion of the condemnation proceedings. (*Henry v. Dubuque Ry.*, 2 Iowa, 228; *Peterson v. Ferreby*, 30 Iowa, 327; *McClain v. People*, 9 Colo. 193, 11 Pac. 85.)

AILSHIE, J.—This is an action commenced in this court by the plaintiff, Portneuf Irrigating Company, against the judge of the fifth judicial district, praying for the issuance of a writ of prohibition. The plaintiff is the owner of an irrigating canal in Bannock county through which it conveys water for the irrigation of about 2,500 acres of land. On January 23, 1909, the Portneuf-Marsh Valley Irrigation Co., Ltd., a corporation, commenced an action in the district court of Bannock county, against the plaintiff herein and others, whereby it sought to condemn sufficient of the plaintiff's canal and right of way for the purpose of so enlarging a section of the canal as to not only carry the volume of water now owned and used by the plaintiff irrigating company, but, also such additional volume of water as will be necessary for the purpose of irrigating 20,000 acres of land lying under the Portneuf-Marsh Valley Company's canals. The corporation seeking to condemn alleged its corporate existence and the fact that it has lands that it has contracted to irrigate and the necessity therefor, and describing the course and route of its proposed canal, and alleges the necessity for condemning a part of the plaintiff company's canal and right of way so as to increase

the canal from its present size of about nine feet in width by four feet in depth, to twenty-four feet in width and five feet in depth. It also prayed for the appointment of commissioners to assess damages, and served notice on the defendants therein of the day on which it would apply to the court for the appointment of commissioners. Thereafter a hearing was had, after which the judge announced his decision to appoint the commissioners, and it is alleged in the complaint in this court that unless restrained by an order of this court, the judge will appoint the commissioners, and as soon as their report is made and the money is paid or deposited, the condemning company will be put into possession of the property sought to be condemned. The plaintiff urges the unconstitutionality of that portion of sec. 5226, Rev. Codes, which provides for the appointment of commissioners pending the action, and for their assessing the damages, and the taking of possession of the property and right of way pending the final determination of the case. The particular portion of this section against which the argument of unconstitutionality is directed is as follows:

"At any time after the commencement of proceedings in the district court, as provided for in this title, to condemn property, and upon ten days' notice to the adverse party, the district court or the judge thereof may appoint three disinterested persons, who shall be residents of the county in which the land is situated, as commissioners to assess and determine the damages that defendant will sustain by reason of the condemnation and appropriation of the property described in the complaint, and the said commissioners shall, before entering upon the discharge of their duties, take and subscribe an oath to faithfully and impartially discharge their duties as such commissioners. Such commissioners shall give at least five days' notice in writing of the time and place where they will meet for the purpose aforesaid, which place, unless agreed upon between the two parties, shall be within five miles of the premises aforesaid. At the time and place mentioned in such notice, they may administer oaths to witnesses, and hear the evidence offered by the parties, and, after viewing the

premises, shall report in writing their proceedings and
the damages which they find the defendant will sustain
by reason of the condemnation and appropriation of said
property, which report sham be signed by said commissioners,
or a majority thereof, and be filed in the office of the clerk
of the district court in which such action shall be pending;
and at any time after payment to the defendant of the amount
so assessed and found by said commissioners as damages, or in
case the defendant shall refuse to receive the same, then at
any time after such amount shall be deposited with the clerk
of the said court to abide the result of said action, the plain-
tiff may enter upon, and take possession of and use, the
property mentioned in the complaint, until the final conclu-
sion of the litigation concerning the same.''

In the first place, it is contended that this provision of the
statute contravenes that part of sec. 14, art. 1 of the consti-
tution, which reads as follows:

''Private property may be taken for public use, but not un-
til a just compensation, to be ascertained in a manner pre-
scribed by law, shall be paid therefor.''

It is insisted that the taking of possession of the property
pending the action is a ''taking'' before the payment of com-
pensation within the meaning and inhibition of the foregoing
provision of the constitution.   In support of this counsel cites
*Davis v. San Lorenzo R. R. Co.,* 47 Cal. 517; Lewis on Emi-
nent Domain, secs. 149, 456; *Steinhart v. Superior Court,* 137
Cal. 575, 92 Am. St. 183, 70 Pac. 629, 59 L. R. A. 404; *San
Mateo Waterworks v. Sharpstein,* 50 Cal. 284; *Sanborne v.
Belden,* 51 Cal. 266; *Vilhac v. Stockton etc. R. R. Co.,* 53 Cal.
208.   We shall not review all these authorities, but will con-
sider some of them, and especially the question that was par-
ticularly involved under the California statutes and consti-
tution.

The case of *Davis v. San Lorenzo R. R. Co.* arose under a
statute of California passed in 1861.   The fatal provision of
that statute consisted in allowing the railroad company to take
possession of the lands of another without first assessing the
compensation to be allowed and paying or tendering the same

to the land owner. On the contrary, the statute authorized a taking possession of the property upon giving security to be approved by the court or paying such sum as the court might designate into court "to pay the compensation in that behalf, when ascertained." After considering the effect of such a statute, the supreme court said:

"If the court or judge makes an order permitting a railroad company to occupy and use land pending the proceedings for condemnation, and under his said order the corporation enters into possession of the same, it is a taking the private property for public use within the meaning of the constitution."

It should be observed that the California statute considered by the court in the Davis case was not similar to sec. 5226 of our code in reference to payment before taking possession. Subsequent to the decision in the Davis case, both the statute and constitution of California were changed, but in the meanwhile the court had been considering the validity of the statutory provisions as announced in *Waterworks v. Sharpstein, Sanborne v. Belden,* and *Vilhac v. R. R. Co., supra.* All of these cases are considered and reviewed in the case of *Steinhart v. Superior Court of Mendocino Co.,* 137 Cal. 575, 92 Am. St. 183, 70 Pac. 629, 59 L. R. A. 404. The decision in this latter case was announced after the adoption of the new constitution of 1879. The California constitution adopted in 1879 differed very materially and essentially from our constitutional provision. It provided, "private property shall not be taken or damaged, for public use, without just compensation having been first made to or paid into court for the owner." This provision of the constitution was evidently framed for the purpose of meeting the objections pointed out in *Davis v. R. R. Co.* The question presented in the Steinhart case was the constitutionality of sec. 1254 of the Code of Civil Procedure of California. The court stated the point to be determined as follows:

"The main question is whether the section authorizing the court to make an order that such plaintiff may 'take possession of and use the land and premises sought to be condemned,

during the pendency and until the final conclusion of the proceedings brought to condemn,' is constitutional. To obtain such order, the plaintiff must pay into court, 'or give security for the payment thereof, to be approved by the judge of such court,' sufficient money to compensate the defendant in case the land is finally taken, or for damages if for any reason the land be not taken. The defendant may apply to the court for the money, but a payment is deemed an abandonment of all defenses except the claim for greater compensation.''

After a review of the previous decisions and a consideration of the constitutional provision, the opinion concludes:

''I do not agree to the proposition that compensation is made to the owner by paying into court a sum of money before the damage has been judicially determined, and when the property owner cannot take the money. Surely, he is not compensated until he may take the money. It is not paid into court for him until he can take it. In the Spring Valley case he might have taken. Here he could not, and therefore compensation in such a case is not first made.''

It is obvious, therefore, that section 1254 of the California Code of Civil Procedure was held unconstitutional, for the reason that the statute did not provide for paying or tendering compensation to the land owner before taking possession of his property. After a careful review of the California cases cited, and noting that none of the statutes there construed were the same as ours, we are satisfied that those authorities are not determinative of the question here presented.

Turning to our own statute, we find that it provides that at ''any time after the commencement of proceedings in the district court,'' and upon ten days' notice to the adverse party, the court or judge may appoint three disinterested persons as appraisers to determine the damages that will be sustained by reason of the condemnation and appropriation of the property. The statute also provides for these persons taking the oath and fixing a time and place for the hearing and hearing all evidence that is produced by both parties. It also provides for their viewing the premises and making a report in writing of their proceedings and of the damages

that will be sustained by reason of the condemnation. It further provides that "at any time after payment to the defendant of the amount so assessed and found by said commissioners as damages, or in case the defendant shall refuse to receive the same, then at any time after such amount shall be deposited with the clerk of the said court to abide the result of said action, the plaintiff may enter and take possession of and use the property."

Now, it is clear that this statute first provides for the appointment of three disinterested persons to fix the damages. It provides a fair and impartial method of hearing and determining and assessing the amount of damages that will be sustained. It requires that this sum shall be actually paid to the defendant or tendered to him before possession can be taken. If he declines to receive or accept the money, the statute requires that it shall be paid to the clerk of the court to await the determination of the action. While the statute does not specifically provide that he can receive this money from the clerk at any time thereafter in the event he changes his mind, yet we assume that to be the intent of the statute, and that he might do so on filing his receipt with the clerk. However this may be, the statute does not require the defendant to waive any right whatever on receiving the money. It also provides a method for his receiving the sum that may have been assessed prior to any *taking possession* of his property.

Objection is made by plaintiff to the method provided by statute for assessing damages. It is claimed that this is not due process of law, in that the damages assessed should be assessed by a jury, and that it is guaranteed such right by the provisions of sec. 7, art. 1 of the constitution. If that contention be correct, then of course plaintiff's property cannot be taken in this method. The constitutional guaranty of the right to trial by jury is clearly a guaranty of the right that existed at the time of the adoption of the constitution; that right was the common-law right. It might also be observed that the statute now under consideration was in force in this territory at the time of the adoption of the con-

sitution.   The power of eminent domain is an inalienable
right of sovereignty (*Hollister v. State*, 9 Ida. 15, 71 Pac.
541; Lewis on Eminent Domain, secs. 1-3), and may be exer-
cised over all the property within the state.

The constitutional provision with reference to the exercise
of the power of eminent domain is a limitation upon the
power and authority of the legislature to act in this matter,
and cannot be viewed or construed as a grant in any respect.
The power of eminent domain adheres in sovereignty as an
essential element thereof and cannot be alienated.   (Lewis on
Eminent Domain, secs. 10, 237.)   Primarily, the power and
exercise of this right for and on behalf of the state rests
with the legislature.   That body may determine the necessity
for the taking, and its determination thereon is final.   In this
state, however, that power has been delegated by the legis-
lature through general statutes defining the uses for which
property may be taken, and vesting in the courts the juris-
diction and authority to determine when the use falls within
any of the enumerated classes, and also as to when the neces-
sity for the taking arises.   It also vests jurisdiction in the
courts to appoint the commissioners and control and direct
the assessment of damages, and to finally adjudicate those
questions in the usual manner and method prescribed for the
trial of ordinary actions.   At common law the proceeding
was inquisitional and *ex parte*, and was instituted at the in-
stance of the sovereign, and the question of damages was
merely ascertained to satisfy his conscience.   (Mills on Emi-
nent Domain, sec. 84; *Koppikus v. State Capitol Com.*, 16
Cal. 249.)   No particular mode was prescribed for fixing that
compensation.   It is not an action at law within the uniform
definition and interpretation of that term, nor has it been so
held in this state or elsewhere.   At the time of the adoption
of the constitution of this state, the eminent domain statutes
were classed among the "special proceedings of a civil
nature," and that remedy has uniformly been so recognized
and invoked.   (*Toncray v. Budge*, 14 Ida. 621, 95 Pac. 26.)
It has been generally held by the American courts that in
the absence of a specific constitutional provision granting the

right of trial by jury in proceedings for condemnation, such right does not exist as a constitutional right. (*Koppikus v. State Capitol Com.*, 16 Cal. 249; *People ex rel. Heyneman v. Blake*, 19 Cal. 596; *Central Branch U. P. R. Co. v. Atchison T. S. F. R. Co.*, 28 Kan. 453; *State ex rel. Andrews v. City of Oshkosh*, 84 Wis. 566, 54 N. W. 1095; *Kansas City Suburban B. R. Co. v. Kansas City, S. T. L. C. R. Co.*, 118 Mo. 599, 24 S. W. 483; Mills on Eminent Domain, sec. 91; *Flint River Steamboat Co. v. Roberts*, 2 Fla. 102, 48 Am. Dec. 190.)

It must be remembered that the constitution of this state authorizes the taking of private property for public use upon payment of a just compensation "to be ascertained in a manner prescribed by law." As we view it, the only question to be determined under this constitutional provision is this: Does section 5226 prescribe a manner for determining the "just compensation" to be paid for plaintiff's property? The constitution might have said that this compensation shall be determined by a jury as is done in some states. (15 Cyc. 873, and cases cited.) But our constitution has not done so. It rather says that compensation shall be determined "in a manner prescribed by law." The legislature has prescribed a method for establishing the "just compensation" to be allowed. The trial court has proceeded in harmony with the provisions of the statute. Now, it is argued by the plaintiff that after the fixing of this compensation by the commissioners and payment of the same to the plaintiff or into court for its benefit, possession may be taken and the property wasted, despoiled and ruined, and that thereafter the condemnation proceedings may be dropped or may terminate in favor of the land owner, in which event it will receive nothing for the damages and waste committed during the occupancy. That argument is successfully answered by the statute itself. The damages that will be sustained by the taking will be assessed by the commissioners before the entry upon the property by the company. The land owner will have the privilege and right of actually receiving that compensation in cash before the entry is made. If the company should ultimately fail in the proceeding, or should not prosecute the proceeding fur-

ther, the land owner will still have the legal title to his property and also the value of the property as assessed by the commissioners.

Another thing that is worthy of note under our eminent domain statute is this: Section 5215 of the Revised Codes, differing from the other provisions of our statute with reference to the time when an action is commenced, provides that a proceeding for condemnation is not commenced until the complaint is filed and a summons is issued. Section 5221 provides that the compensation to be assessed shall be fixed as of the date of the issuance of the summons. If the price of the property or the damages to be sustained is to be fixed as of the date of the issuance of the summons, and the land owner receives that compensation, it can make no difference to him how much damage or waste may thereafter be committed upon the property. While he does not part with the legal title until the termination of the proceedings and final decree, still his damage and compensation is in any event to be measured as of the date of the issuance of the summons. It is alleged, however, that the defendant in condemnation proceedings is given the right of trial by jury on the final hearing in the district court, and that the jury may award a larger amount of damages than the commissioners have awarded, and that he will have no security for the payment of any such additional award. This is not a reason that can be lodged against the constitutionality of the statute. The right of trial by jury, or even of appeal, is not a constitutional right given him in such a case, but is a favor granted him by the law-making power. He is not obliged to invoke it. He may exercise his pleasure in availing himself of this right. If he avails himself of it and finally secures a judgment more favorable to him than the award of the commissioners, the company is bound to pay him such additional sum or become a trespasser and be liable to an action in ejectment. (*St. Joseph etc. R. Co. v. Callender,* 13 Kan. 496; Rev. Codes, secs. 5223-5226.)

Justice Brewer, while on the supreme bench of Kansas, considered this identical phase of the question in *Central*

*Branch U. P. R. Co. v. Atchison, T. & S. F. R. Co.*, 28 Kan. 464, and his discussion is so clear and pointed that we quote at length from the opinion. He says:

"Now, if the legislature violates no constitutional provision in making the award of the commissioners final, if the land owner has no constitutional right to an appeal from such an award, it would seem to follow necessarily that that which the legislature may withhold altogether it may grant upon conditions. The appeal being a matter of favor and not a matter of right, the power that grants it may prescribe the terms upon which it shall be taken. How can it be held that a land owner who has no right to an appeal can, when one is tendered to him upon conditions, accept the tender and repudiate the conditions? Can he of his own volition enlarge the scope of a grant, which is a mere matter of legislative favor? Many words cannot make this clearer; the land owner's constitutional guaranty terminates with the award of the commissioners. The appeal is a favor, and carries with it all the conditions the legislature has seen fit to impose. An examination of the statute leaves no doubt as to the extent of these conditions; it provides that the appeal shall only be as to the amount of damages, and that it shall not delay the prosecution of the work. But we are met here with the objection that the appeal sets aside the award of the commissioners; that there then exists no adjudication of the amount of compensation; that upon the trial of the appeal it not infrequently happens that the jury award a much higher sum than the commissioners; and that if the railroad company be already in possession of the land, having constructed its road over it, it may result that the railroad appropriates the land without prior payment or deposit of the compensation. To that we reply, that the land owner is under no obligations to appeal. His compensation has been determined by a competent and constitutional tribunal, and the amount of that compensation is paid or deposited for him, and hence he has no right to complain if of his own volition he initiates further proceedings."

It is also alleged in the complaint that no evidence has been taken in this case, and that the judge has overruled the objections of the plaintiff herein,—defendant in the court below,—and decided to appoint the commissioners. It is insisted that to do so will be without jurisdiction, for the reason that the necessity has been denied by the land owner and that to appoint commissioners without determining the necessity for the taking would be to act without jurisdiction.

Section 5213, Revised Codes, provides as follows: "Before property can be taken it must appear:

"1. That the use to which it is applied is a use authorized by law;

"2. That the taking is necessary to such use;

"3. If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."

It is conceded that the purpose for which the company seeks to condemn this is a public use,—it is so declared by the constitution, sec. 14, art. 1,—but it is denied that it is necessary to take this particular land. It is also denied that the public use for which it is sought is more necessary than the use to which it is now applied. It nowhere appears from the pleadings or record in this case that the trial court has refused to hear evidence on any of these questions, or that any evidence has been offered or ruling made thereon, and in the absence of such a showing, we must assume that the court will not appoint the commissioners until he has determined either upon the pleadings or from evidence that the purpose for which the condemnation is sought is a necessary use. It would be folly to appoint commissioners to assess damages for the taking of property that is not for a public use or is not necessary for such use within the purview of the statute. The question of necessity is one that should be determined by the court *in limine* before appointing commissioners. It was said by the supreme court of Colorado in *Sand Creek Irr. Co. v. Davis,* 17 Colo. 326, 29 Pac. 742, that:

"When a material question as to the necessity, or, as in this case, as to the feasibility and practicability, of the taking, is raised, the regular order of procedure is to have such question tried and determined *in limine,*—that is, before any inquisition for ascertaining the compensation and damages is entered upon; for, if the preliminary question be determined adversely to the petitioner, no compensation or damages can be awarded." (*Barrett v. Kemp,* 91 Ia. 296, 59 N. W. 76; *Butte A. & P. Ry. Co. v. Montana U. Ry. Co.,* 16 Mont. 504, 50 Am. St. 508, 41 Pac. 232, 31 L. R. A. 298; *Moore v. Sanford,* 151 Mass. 285, 24 N. E. 324, 7 L. R. A. 151; Mills on Eminent Domain, sec. 11; Lewis on Eminent Domain, sec. 238.)

It is also contended that the use to which the Portneuf-Marsh Valley Company seeks to condemn this property is no more necessary than the use to which the plaintiff is applying it,—both uses being for an irrigating canal in which to carry water for the irrigation of agricultural lands. It has been held by some courts that in the absence of a statute authorizing such taking, property that has already been appropriated to a public use cannot be condemned for another public use. (See note to *Grand Rapids etc. R. R. Co. v. Grand Rapids & Indiana R. R. Co.,* 24 Am. Rep. 551; *Evergreen Cemetery Assn. v. City of New Haven,* 43 Conn. 234, 21 Am. Rep. 643, and note; *Barre R. Co. v. Montpelier & W. R. R. Co.,* 61 Vt. 1, 15 Am. St. 877, 17 Atl. 923, 4 L. R. A. 789, and note.) But in this state we have a statute authorizing the taking of "property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has been already appropriated." (Subd. 3, sec. 5212, Rev. Codes.)

As we understand the matter, the question here does not exactly arise as to the proposed work being a more necessary public work than the original irrigation purpose for which the canal is used. Certainly the fact that the proposed canal will irrigate 20,000 acres, while the plaintiff's canal only irrigates 2,500 acres, does not make it a more

necessary public use. (*Cary Library v. Bliss,* 151 Mass. 364, 25 N. E. 92, 7 L. R. A. 771; *West River Bridge v. Dix,* 6 How. (47 U. S.) 507, 12 L. ed. 535; *Chicago & N. W. Ry. Co. v. Chicago & E. R. R. Co.,* 112 Ill. 589.)   In other words, the necessity is not measured by the extent to which the use is applied. (*Butte A. & P. Ry. Co. v. Montana U. R. Co.,* 16 Mont. 504, 50 Am. St. 508, 41 Pac. 238, 31 L. R. A. 298; *Talbot v. Hudson,* 16 Gray, 417; *Kettle River R. Co. v. Eastern Ry. Co.,* 41 Minn. 461, 43 N. W. 473, 6 L. R. A. 111; *Hibernia R. Co. v. De Camp,* 47 N. J. L. 518, 54 Am. St. 197, 4 Atl. 318.)

The question, however, arising in this case is not that of actually condemning plaintiff's ditch and irrigation and water right, but it is rather an effort to condemn such of its right of way as is not being actually used as a canal for carrying water, so that the plaintiff may use that right of way in the construction of a larger canal through which the plaintiff may continue to carry its water, and through which the Portneuf-Marsh Valley Company may also carry the water necessary for the irrigation of its lands.   In other words, it is proposed to so enlarge the present canal that it will do the service required for both companies.   This principle has been repeatedly recognized in condemnation proceedings, both in ditch cases and railroad cases.   It is not uncommon for the courts to permit that part of the railroad company's right of way not actually occupied by its tracks and buildings to be condemned for tracks and station grounds for another company. (*Nash v. Clark,* 27 Utah, 158, 101 Am. St. 953, 75 Pac. 371, 1 L. R. A., N. S., 208; *Butte A. & P. R. Co. v. Montana U. R. Co., supra; Denver P. & I. Co. v. Denver & S. R. Co.,* 30 Colo. 204, 69 Pac. 568, 60 L. R. A. 383; *Southern Pac. R. Co. v. Southern Cal. Ry. Co.,* 111 Cal. 221, 43 Pac. 602; *City of Pasadena v. Stimson,* 91 Cal. 238, 27 Pac. 604; note to *Barre R. Co. v. Montpelier & W. R. R. Co.,* 4 L. R. A. 789; *Oregon S. L. R. Co. v. Postal Tel. Cable Co.,* 111 Fed. 842, 49 C. C. A. 663; *Stewart v. Great Northern Ry. Co.,* 65 Minn. 515, 68 N. W. 208, 33 L. R. A. 427; *Sand Creek Lateral Irr. Co. v. Davis,* 17 Colo. 326, 29 Pac. 742.)

We conclude that sec. 5226, Revised Codes, is constitutional and valid, and that the district judge is acting within the scope of his jurisdictional powers and authority. The demurrer will be sustained, the writ denied and the petition dismissed and it is so ordered. Costs awarded in favor of the defendant.

Sullivan, C. J., and Stewart, J., concur.