Points Decided.

(October 3, 1911.)

# FRANK D. RYAN, Respondent, v. WEISER VALLEY LAND & WATER CO., Appellant.

## [118 Pac. 769.]

Injunction—Trespass—Jurisdiction—State and Federal Jurisdiction—Conflict of Jurisdiction—Laches and Estoppel—Mandatory Injunction.

### (Syllabus by the court.)

1.    Where a water company has constructed a dam across a stream for the purpose of impounding water, and the dam or structure results in the flooding of the lands of another, and an action for condemnation of such land is thereafter prosecuted in the federal court, and a judgment is entered in favor of the land owner for the value of the land taken, and the company thereupon appeals to the United States circuit court of appeals, the state court has the jurisdiction to issue an injunction to restrain such company from flooding and submerging the land sought to be condemned until such time as the value thereof has been paid to the land owner or into court for his use and benefit as provided by law. In such case, there is no conflict of jurisdiction between the state and the federal courts, and no rule of law or comity requires the state court to desist or refrain from taking jurisdiction for the purpose of protecting the land owner in his ownership and right of possession.

2.    Under the facts disclosed in this case, *held* that no such laches are shown as to constitute an estoppel against the land owner, and that no facts or circumstances are disclosed which would preclude or estop the land owner from pursuing the equitable remedy for relief by injunction.

3.    Under the constitution and laws of this state, the condemnor cannot acquire any right or interest in the lands of another which would entitle him to the possession and occupation thereof against the will and without the consent of the land owner, until he first pays such just compensation as may be ascertained in the manner prescribed by law.

4.    No title can pass to the condemnor in condemnation proceedings until after the payment of the value of the property which has been determined and assessed in the manner prescribed by law.

5.    Where a person seeking to condemn a tract of land for a public use has entered upon and taken possession of the land without

paying for the same and without the consent of the land owner, he cannot defend in a suit for injunction to restrain him from continuing his occupation and possession thereof, on the ground that the land is of little or no value to the land owner, and that the necessity for the use and occupation thereof by the party seeking to condemn is great or imperative.

6. As a general proposition, a mandatory injunction will not lie to compel the destruction of buildings or structures prior to a hearing and determination of the case on its merits.

7. Under the facts and circumstances of this case, *held,* that the alternative order and injunction made and entered in this case was not an abuse of the power of the court, and the discretion vested in courts of equity.

APPEAL from the District Court of the Seventh Judicial District for Washington County.    Hon. Ed. L. Bryan, Judge.

Action by plaintiff for an injunction to restrain the defendant from continuing to trespass upon plaintiff's land and to flood and overflow the same.    From a temporary restraining order, *pendente lite,* defendant appealed.    *Affirmed.*

Richards & Haga, for Appellant.

"Where jurisdiction has attached to person or thing, it is (unless there is some provision to the contrary) exclusive in effect until it has wrought its function." (*Taylor v. Taintor,* 16 Wall. (U. S.) 366, 21 L. ed. 287; *Peck v. Jenness,* 7 How. (U. S.) 612, 12 L. ed. 841; *Covell v. Heyman,* 111 U. S. 176, 4 Sup. Ct. 355, 28 L. ed. 390; *Heidritter v. Oil Cloth Co.,* 112 U. S. 299, 5 Sup. Ct. 135, 28 L. ed. 729.)

The federal court cannot place appellant in possession of the land upon payment of the judgment without violating the injunction of the state court. ˙ That the bringing of this suit in the state court interferes with the jurisdiction of the federal court is so apparent that no argument is required. (*B. & O. Ry. Co. v. Wabash Ry. Co.,* 119 Fed. 678; *Starr v. Chicago R. I. & T. Co.,* 110 Fed. 3; *Wallace v. McConnell,* 13 Pet. (U. S.) 135, 10 L. ed. 95; 11 Cyc. 1003; *Provost v. Millard,* 3 Or. 370.)

◦ Where a preliminary injunction, mandatory in character, will have the effect of granting to the plaintiff all the relief

that he could obtain upon a final hearing, it should be denied, except in very rare cases, and then only where the plaintiff's right to the relief is clear and certain. (11 Cyc. 743; *Audenried v. Phila. & Reading Ry. Co.,* 68 Pa. 370, 8 Am. Rep. 195; *Murdock's Case,* 2 Bland (Md.), 469, 20 Am. Dec. 381; *Beck v. New York & S. Ry. Co.,* 77 N. Y. Supp. 357, 74 App. Div. 626; *Ladd v. Flynn,* 90 Mich. 181, 51 N. W. 203; *World's Col. Ex. Co. v. Brennan,* 51 Ill. App. 128; *Am. L. P. Co. v. Schneegass,* 178 Fed. 735.)

"The right to an injunction may be lost by delay during which the defendant has expended large sums of money and the public have acquired an interest." (Lewis, Eminent Domain, p. 1516; *N. P. Ry. Co. v. Smith,* 171 U. S. 260, 18 Sup. Ct. 94, 43 L. ed. 157; *Roberts v. N. P. R. Co.,* 158 U. S. 1, 15 Sup. Ct. 756, 39 L. ed. 873; *Miocene Ditch Co. v. Jacobsen,* 146 Fed. 680, 77 C. C. A. 106; *Penn Mutual Life Ins. Co. v. Austin,* 168 U. S. 695, 18 Sup. Ct. 223, 42 L. ed. 631; *Logansport v. Uhl,* 99 Ind. 540, 49 Am. Rep. 109; *Holt v. Parsons,* 118 Ga. 895, 45 S. E. 690; *So. Marble Co. v. Darnell,* 94 Ga. 231, 21 S. E. 531; 1 High on Injunctions, 3d ed., secs. 549, 618; *Beers v. C. M. & St. P. Ry. Co.,* 141 Fed. 957, 73 C. C. A. 273; *Attorney General v. R. R. Co.,* 24 N. J. Eq. 49; *McKee v. Grand Rapids,* 137 Mich. 200, 100 N. W. 580; *Hendrix v. So. Ry. Co.,* 130 Ala. 205, 89 Am. St. 27, 30 So. 596; *Midland Ry. Co. v. Smith,* 113 Ind. 233, 15 N. E. 256; *Katz v. Walkinshaw,* 141 Cal. 116, 99 Am. St. 35, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236; *New York v. Pine,* 185 U. S. 93, 22 Sup. Ct. 592, 46 L. ed. 820; *West & Co. v. Octoraro Water Co.,* 159 Fed. 528.)

Lot L. Feltham, and Frank D. Ryan, for Respondent.

The injunction suit in the state court can in no way interfere with the federal court in doing everything to carry into effect the judgment of condemnation. (*Union Mutual Life Ins. Co. v. Kirchoff,* 149 Ill. 536, 36 N. E. 1031; *St. Jos. Fire & Marine Ins. Co. v. Leland,* 90 Mo. 177, 59 Am. Rep. 9, 2 S. W. 431; *Buck v. Colbath,* 70 U. S. 334, 18 L. ed. 257.)

Mandatory injunctions are quite frequently granted on preliminary hearings, where the facts are little in dispute and

where the right to an injunction on final hearing is clear and the defendant's condition would be little changed by further evidence. (1 High on Injunctions, 3d ed., p. 4; *Broome v. N. Y. & N. J. Co.,* 42 N. J. Eq. 141, 7 Atl. 851.)

Injunction is a proper remedy in cases of trespass like the case at bar or for the abatement of a nuisance. (*La Vaine v. Stack-Gibbs Lumber Co.,* 17 Ida. 51, 134 Am. St. 253, 104 Pac. 666; *Wilson v. Eagleson,* 9 Ida. 17, 108 Am. St. 110, 71 Pac. 613.)

"The appellant cannot lawfully appropriate respondent's property to its own use in this way." (*Shephard v. Coeur d'Alene Lbr. Co.,* 16 Ida. 293, 101 Pac. 591.)

Idaho has a statute on injunctive relief that is unusually broad. "Injunction will issue to restrain temporarily an act which will result in great damage to the plaintiff, although the injury is not irreparable, and notwithstanding other remedies lie in behalf of plaintiff." (*Staples v. Rossi,* 7 Ida. 618, 65 Pac. 67; *Price v. Grice,* 10 Ida. 443, 79 Pac. 387.)

"A party is not under the necessity of waiting until his property has been damaged and destroyed, and his business disorganized, and his premises encroached upon to the extent of his ouster, and then resort to an action at law for his redress." (*Meyer v. First Nat. Bank,* 10 Ida. 175, 77 Pac. 334; *Smith v. Alberta etc. Reclamation Co.,* 9 Ida. 399, 74 Pac. 1071; *Montpelier Milling Co. v. City of Montpelier,* 19 Ida. 212, 113 Pac. 741.)

Respondent was not estopped to seek injunctive relief by inaction while improvements were being made. (*Mashburn v. St. Joe Improvement Co.,* 19 Ida. 30, 113 Pac. 92.)

"A corporation armed with the power of eminent domain has no power to enter upon and take possession of the premises sought to be condemned until it either pays to the owner of the property the amount assessed and found as damages by commissioners duly appointed, or, in case the owner refuses to accept the award, has paid the same to the clerk of the court to abide the result of the action." (*Pyle v. Woods,* 18 Ida. 674, 111 Pac. 746; *Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 100 Pac. 1046; *Cherokee Nation v. Kansas R. Co.,* 135

U. S. 641, 10 Sup. Ct. 965, 34 L. ed. 295; *State ex rel. McClellan v. Graves*, 19 Md. 351, 81 Am. Dec. 639; 15 Cyc. 926.)

"The plea of public inconvenience is no answer to the prayer for this remedy (injunction), since the public good derives no permanent rights in private property except on payment of the just compensation guaranteed by the constitution." (Lewis, Eminent Domain, p. 1536; *Evans v. Missouri, Iowa & Nebr. Ry. Co.*, 64 Mo. 453; *Cilly v. Cincinnati*, 7 Ohio Dec. (Reprint) 344; *Proskey v. Cumberland Realty Co.*, 35 Misc. 50, 70 N. Y. Supp. 1125; *Sullivan v. Jones etc. Steel Co.*, 208 Pa. 540, 57 Atl. 1065, 66 L. R. A. 712.)

"The granting of a preliminary restraining order during the pendency of the action is within the sound discretion of the court." (*Angell v. Continental Oil Co.*, 19 Ida. 746, 115 Pac. 692.)

AILSHIE, J.—This is an appeal from an order granting a temporary injunction. The plaintiff, Frank D. Ryan, commenced an action in the trial court against the Weiser Valley Land & Water Co. for an injunction enjoining and restraining the company from maintaining a dam and flooding plaintiff's land.

Respondent's land is situated in what is known as Lost Valley. Lost creek flows through the valley, and at a short distance below the lands of the respondent enters a canyon, forming a natural reservoir site in the basin above where these lands are located. The appellant company built a dam across the creek at the point where it enters the canyon for the purpose of creating a reservoir or storage basin for collecting water to be used for irrigation purposes on the desert lands several miles below. An action was subsequently commenced by the company to condemn these lands and at that time the respondent, being a resident of the state of Kansas, removed the action from the state to the federal court. The case proceeded in the federal court to final judgment. The land and water company was dissatisfied with the judgment and prosecuted an appeal to the circuit court of appeals. When the condemnation suit was first called in the federal court, the

defendant was not prepared to go to trial, and accordingly made application to have the trial of the case continued from the fall of 1909 until the spring or early summer of 1910. The company resisted the continuance on the ground that it wanted to fill the reservoir during the winter of 1910, and that filling the reservoir would necessitate the flooding of these lands. On suggestion by the court, a stipulation was entered into between the parties, granting the company the right "to overflow and submerge the lands described in the second amended complaint until final judgment in this court, . . . . upon the plaintiff executing a bond to recompense the defendants for all damages that they may sustain by reason thereof in the sum of $5,000," etc. The bond was given and the company filled its reservoir and accordingly flooded the lands during the spring and summer of 1910. The case was tried in the federal court in the month of June, 1910, and, as hereinbefore stated, judgment was entered in favor of the owner of the land for the value thereof, and the appeal was taken to the circuit court of appeals, and the case has been pending in that court ever since. No payment of the value of the land as ascertained has ever been made, and no deposit of the money has been made in court. The stipulation, as will be observed from the foregoing quotation, only authorized the company to flood and submerge the lands "until final judgment in this court," which was the federal court for the district of Idaho. The matter went along in this manner until January, 1911, when the respondent herein commenced this action in the state court to enjoin and restrain the company from further flooding, submerging and overflowing his land, and thereupon applied for a writ of injunction. The district judge, after hearing the matter on the pleadings and affidavits, made and entered what might be termed an alternative order. The company had admitted that the land was of the value of $2,500, and it had admitted that it was flooding and overflowing and submerging the land. The district judge, evidently endeavoring to cause as little inconvenience to any of the parties as possible and at the same time accomplish substantial justice, ordered that if the company pay to the

defendant the sum of $2,500, which it admitted to be the value of the land, which sum should be credited on any judgment of condemnation as it might finally be entered either on appeal or on retrial, then the company might continue to flood and overflow the land until the final determination of the matter in the circuit court of the United States for the district of Idaho; and that if the company should abandon the proceedings or fail to pursue the condemnation action to final judgment and take the land, that the $2,500 should be retained by the land owner as liquidated damages for the flooding and submerging of the same. It was further provided by the order that in the event the company failed, neglected or refused to make such payment, that then and thereupon it should be enjoined and restrained pending the action from flooding or overflowing and submerging the plaintiff's lands and from maintaining any dam or obstructions in the stream that would cause such flooding.

The company has prosecuted this appeal, and now argues that the lower court was without jurisdiction, for the reason that the case was pending in the federal court,—a court of concurrent and co-ordinate jurisdiction and which had first acquired jurisdiction of the matter; and, secondly, appellant contends that the respondent was estopped from maintaining this action by reason of laches. It is also argued that the order was in the nature of a mandatory injunction, and should not have issued until after a final hearing. We will deal with these questions in the order in which they have been suggested.

In the first place, there is no conflict of jurisdiction between the state and federal court in this case. The federal court obtained jurisdiction in the condemnation proceeding, and so far as the record here shows, the case is proceeding in the regular way in the courts of the United States looking to a final determination of the matter on appeal. That fact, however, cannot, under any known principle of law, give the condemnor any right to the possession of the land sought to be condemned until it first pays such just compensation as may be ascertained in the manner prescribed by law. (Sec.

14, art. 1, State Constitution; *Latah County v. Hasfurther,* 12 Ida. 797, 88 Pac. 433; *Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 100 Pac. 1046; *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81; *Boise Valley Const. Co. v. Kroeger,* 17 Ida. 384, 105 Pac. 1070; *Pyle v. Woods,* 18 Ida. 674, 111 Pac. 746.) The action in condemnation is purely an action to determine the value of the property sought to be taken. (Secs. 5216, 5220, 5226, Rev. Codes.) No title can pass to the condemnor until after the payment of the value of the property has been made. (Secs. 5225, 5226, Rev. Codes; *Pyle v. Woods,* 18 Ida. 674, 111 Pac. 746.) In this case no title or right of possession has ever passed from the land owner to the condemnor under the condemnation proceedings in the federal court. The present action is one having to do with the right of possession of the land entirely, and is distinct and independent from the action pending in the federal court. We have no doubt of the right and jurisdiction of the state court to protect the land owner in his possession and right of possession and use of his land until such time as the condemnor has had the value of the property assessed in the manner pointed out by the statute and has paid the same either to the land owner or into court for his use and benefit. No conflict of jurisdiction can arise under this state of facts, and the district court was under no duty, either by mandate of law or the rule of comity, to refrain from or hesitate in reaching out and protecting the land owner in his possession and right of possession until such time as his property is taken from him by due process of law and the payment of a just compensation ascertained in the manner prescribed by law.

This leads to the other question as to whether the respondent was guilty of such laches as would estop him from prosecuting this action for a writ of injunction. The only facts which it is claimed constitute the estoppel were these: The company constructed the dam sometime during the autumn of 1909, and had not completed the same at the time of the commencement of the action for condemnation. The land owner at no time objected to the construction of the dam or forbade the same. The dam was not on the respondent's land,

however, but was down the stream something like perhaps a quarter of a mile from his land. The only further fact which is charged as creating an estoppel is the stipulation which was entered into in the federal court at the time the continuance was had from the autumn of 1909 until the spring of 1910 for the trial of the case. The material part of that stipulation has heretofore been quoted. This stipulation would clearly have prevented the land owner from suing out a writ of injunction during the pendency of the case or at any time prior to the final entry of judgment in the federal court. It would also doubtless have prevented his procuring an injunction to restrain the use of the dam and reservoir during the irrigation season of 1910, for the reason that the only purpose of filling the dam during the winter of 1909 and 1910 was to use the water for irrigation purposes during the irrigation season of 1910. That stipulation, however, does not purport to continue perpetually or pending an appeal, nor would it work an estoppel against the land owner resisting the continuous use and occupation of his land without the payment of compensation therefor.

Counsel for appellant cite *New York v. Pine,* 185 U. S. 93, 22 Sup. Ct. 592, 46 L. ed. 820, *Fresno St. Ry. Co. v. S. P. R. R. Co.,* 135 Cal. 202, 67 Pac. 773, Lewis on Eminent Domain, p. 1516, *N. P. Ry. Co. v. Smith,* 171 U. S. 260, 18 Sup. Ct. 794, 43 L. ed. 157, *Miocene Ditch Co. v. Jacobsen,* 146 Fed. 680, 77 C. C. A. 106, and a long list of other cases to the effect that one cannot stand by and see valuable improvements erected on his land and keep silent, and thereafter successfully prosecute his action to enjoin the maintenance of such improvements. These cases hold that "the right to an injunction may be lost by delay during which the defendant has expended large sums of money and the public have acquired an interest," and this doctrine is particularly strong and particularly applicable in cases where it is shown that the land owner had full notice of the work that was being done and that his land was being taken, and that the work was of a permanent character and of a public or *quasi*-public nature in which the public had acquired certain rights. We have

no doubt that these cases clearly state the law, but that rule does not fit the state of facts presented in this case.   The fact that the company was supplying a large number of land owners with water to irrigate their land during the irrigation season of 1910 could not give them any rights in the respondent's land, and this is especially true where the reservoir was being used and the land flooded under a special stipulation which only extended until such time as the judgment might be entered in the condemnation action.   These things were all matters of public record, and those who dealt with the land and water company and received water from its system were put on their notice, and their use of the water under such circumstances could not be subsequently employed as a club over the head of the land owner as a means of protection to the land and water company which was trespassing upon the respondent's land and appropriating it to its own use.

Considerable has been said in this case about the value of the respondent's land and the comparative damage and injuries that would be inflicted as between the land owner on the one side and the water company and the water consumers on the other.   No question of valuation can enter into a case where a man is the absolute owner of a tract of land and is seeking to obtain or protect the possession and occupation of the same as against a trespasser who shows no right thereto. In such a case, it becomes a plain and simple proposition of protecting property rights.   We have endeavored in a long line of cases in this state to make it so plain that everyone may know and understand that property rights in Idaho are sacred, and that it does not make a particle of difference whether it be of the value of a dollar or a million, it must, in the ultimate judgment of the court, all amount to the same thing in the matter of its protection and preservation to its owner.

In *La Veine v. Stack-Gibbs Lumber Co.,* 17 Ida. 51, 134 Am. St. 253, 104 Pac. 666, we had occasion to consider this question as it was sought to be applied to a land owner, and in dealing with a lumber company which had entered upon the lands of another without right or authority, and said:

"They should be required to respect the private rights of property just the same as anyone else, and the fact that they owned lumber about Lake Fernan or millions of feet of logs floating in the lake furnishes no reason, pretext or excuse whatever for their turning trespassers and wrongdoers themselves and riding over the rights of others. The fact that appellant's land may not be of any particular value for agriculture or any other purpose has nothing to do with the case. It is plaintiff's land, and he had a right to use it as he pleases and to exclude everyone else. . . . . The mere plea of convenience gives them no legal standing. If it did, a man's property rights would never be safe or secure."

In *Shephard v. Coeur d'Alene Lbr. Co.*, 16 Ida. 293, 101 Pac. 591, this court, in passing upon the right of a land owner abutting on the Coeur d'Alene Lake to have her property protected against the booming of lumber and logs on the waterfront, said:

"Whether this right of ingress and egress is of any particular value to respondent or not can make no difference to the appellant; it is a property right of respondent's that must be respected, and she had a perfect right to resort to the court for the remedy she sought in this case."

In *Meyer v. First National Bank*, 10 Ida. 175, 77 Pac. 334, this court, in discussing the right of the property owner to have injunction as a proper relief where his property was being trespassed upon and appropriated to the use of the trespasser, said:

"A party is not under the necessity of waiting till his property has been damaged and destroyed and his business disorganized and his premises encroached upon to the extent of his own ouster, and then resorting to an action at law for redress."

Many other cases might be cited from this court which hold substantially to the same effect as enunciated in the foregoing excerpts. The courts of this state have endeavored to supplant the use of force for the protection of property by orders and decrees in equity which have been found to be equally as effective as violence, fully as protective, much less destructive, and a great deal more orderly. We feel that in this

case the district court acted wisely and discreetly in making his order and in giving the company the alternative of paying to the party a sum it admitted the property was worth, and thereby allowing it to continue in the use and occupation of the premises and at the same time prosecute its appeal in the federal court to determine the question as to whether any error had been committed against it in the assessment of damages.    If the company wanted to be entirely fair and just, it seems that it would have accepted this alternative of the court's order.    Failing, however, to do so, the court was entirely right in protecting the land owner in his right of possession and occupation of his premises.    This was a clear legal right which the land owner had and in which he was entitled to protection.    The fact that the order in the alternative necessarily assumed a mandatory form is not a sufficient reason for a reversal thereof, under the peculiar facts of this case.    The order prohibited and restrained the land and water company from flooding and submerging the respondent's land, and prohibited and restrained it from maintaining any structure or dam which would cause the flooding and overflow of the lands.    This might have necessitated a destruction of the dam in part.    Under the admitted facts of the case, however, the court clearly had the right to enter its order prohibiting and restraining the flooding and submerging of respondent's land, and if a compliance with that order necessitated affirmative action on the part of the land and water company, that necessity would not render the order and decree erroneous.    The appellant is correct in the position taken by its counsel that mandatory injunctions which require the destruction of property prior to a hearing and determination of the case on its merits should seldom be granted.    (11 Cyc. 743; *Audenried v. Pennsylvania & Reading Ry. Co.*, 68 Pa. 370, 8 Am. Rep. 195; *Murdock's Cases*, 2 Bland (Md.), 469, 20 Am. Dec. 381.)

The order appealed from should be, and it is hereby, affirmed.    Costs awarded in favor of the respondent.

Stewart, C. J., and Sullivan, J., concur.

Petition for rehearing denied.