(March 3, 1923.)

IDAHO FARM DEVELOPMENT COMPANY, a Corpo-
ration, Appellant, v. IRA BRACKETT, SARAH
BRACKETT, FRANK CLARK, INEZ CLARK et al.,
Respondents.

[213 Pac. 696.]

CONDEMNATION PROCEEDING — MEASURE OF DAMAGES — LOSS TO CON-
DEMNEE — BENEFIT TO CONDEMNOR — MARKET VALUE FOR CERTAIN
PURPOSE — EVIDENCE AS TO VALUE OF OTHER LANDS — VALUE AS
PART OF LARGER TRACT ADAPTABLE TO CERTAIN USE — INCOME
FROM OTHER LANDS—PREJUDICIAL ERROR.

1. It is error in a condemnation proceeding to admit evidence
of the income or profit which the condemnor expects to gain from
his use of the property for the purpose for which it is being
condemned.

2. The condemnee may show whether the property sought to
be condemned has a market value for a certain purpose, and,
if so, what that market value is.

Publisher's Note.
    2. Profits derived from business conducted on property taken
under eminent domain as evidence of market value, or element
of damages, see notes in Ann. Cas. 1918B, 869, 7 A. L. R. 163.

3.  Where the value of a specific tract of land sought to be condemned as a reservoir site is the issue, it is error to admit evidence as to the market value of reservoir sites in southern Idaho of similar capacity and dimensions.

4.  Compensation to the owner of one of many parcels of land taken by eminent domain for a reservoir site should not include any part of an increase in value for that purpose, due to its union with other parcels, if such union would not have been practicable, or have been attempted, except by the intervention of eminent domain.

5.  Where the issue is the market value of land which has been used as a stock ranch, evidence as to the income which has been derived from other stock ranches is not admissible.

6.  The giving of correct instructions as to the measure of damages in a condemnation proceeding does not render harmless the introduction of improper evidence as to value, where it appears likely that the improper evidence influenced the verdict.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Condemnation proceeding. Judgment for damages in favor of condemnees. *Reversed.*

Edwin Snow and Ostrom & Green, for Appellant.

Requiring the general manager of the plaintiff company to answer interrogatories as to the estimated cost to appellant of the irrigation project and the expected price to be received by appellant from the sale of its water rights had the effect of making appellant pay not the reasonable value of the property condemned but the value or benefit of the property to the condemnor. (*Portneuf-Marsh Valley Irr. Co. v. Portneuf Irr. Co.,* 19 Ida. 483, 114 Pac. 19; *Rawson-Works Lumber Co. v. Richardson,* 26 Ida. 37, 141 Pac. 74.)

The value in terms of money, that is, the price which one or another witness might think the land would bring for any specific purpose, is not admissible as an element in determining market value. (*Sacramento Southern R. Co. v. Heilbron,* 156 Cal. 408, 104 Pac. 981, and cases cited; *Vallejo*

*& N. R. Co. v. Reed Orchard Co.,* 169 Cal. 545, 147 Pac. 238, and cases there cited; *Rawson-Works Lumber Co. v. Richardson, supra; Weiser Valley Land & Water Co. v. Ryan,* 190 Fed. 417, 111 C. C. A. 221; *Revell v. City of Muskogee,* 36 Okl. 529, 129 Pac. 833.)

Where there is no evidence that the defendants' land standing by itself is eligible as a water storage reservoir, the fact that it is so situated as to be available for a union with other lands to make up a reservoir site does not make admissible evidence showing the value of the aggregate lands for reservoir purposes. (*McGovern v. City of New York,* 229 U. S. 363, 39 Sup. Ct. 876, 57 L. ed. 1228; *City of New York v. Sage,* 239 U. S. 57, 36 Sup. Ct. 25, 60 L. ed. 143; *Medina Valley Irr. Co. v. Seekatz,* 237 Fed. 805, 151 C. C. A. 47; *In re Bensel,* 230 Fed. 932.)

The profits of a business conducted on land may not be shown. (C. S., sec. 7414; 13 Ency. of Evidence, 444; *Cox v. Philadelphia R. Co.,* 215 Pa. St. 506, 64 Atl. 729; *Becker v. Philadelphia etc. R. R. Co.,* 177 Pa. St. 252, 35 Atl. 617, 35 L. R. A. 583; *Gauley Eastern R. Co. v. Conley,* 84 W. Va. 489, 100 S. E. 290; *Buchanan R. Co. v. Great Scott Coal Co.,* 75 W. Va. 423, 83 S. E. 1031.)

S. T. Hamilton, Walters & Hodgin, R. P. Parry and C. A. Bailey, for Respondents.

The respondents were entitled to present to the jury every available use for which the lands were adapted, including their adaptibility for reservoir purposes. (*Alloway v. Nashville,* 88 Tenn. 510, 13 S. W. 123, 8 L. R. A. 123, and note; *Chicago, M. & St. Ry. Co. v. Alexander,* 47 Wash. 131, 91 Pac. 626; *Ranck v. Cedar Rapids,* 134 Iowa, 563, 111 N. W. 1027; *Tracey v. City of Mt. Pleasant,* 165 Iowa, 435, 146 N. W. 83; *Kansas City O. L. & T. Ry. Co. v. Weideman,* 77 Kan. 300, 94 Pac. 146; *Idaho Western Ry. Co. v. Columbia Conference,* 20 Ida. 568, 119 Pac. 60, 38 L. R. A., N. S., 497; 10 R. C. L., pp. 128, 129, par. 112, and cases cited.)

The respondents were entitled to prove the value of the lands for special uses in dollars and cents. (*San Diego*

*Land & Town Co. v. Neale,* 78 Cal. 63, 20 Pac. 372, and authorities cited; *Sanitary District of Chicago v. Loughran,* 160 Ill. 362, 43 N. E. 359; *Kind v. Minneapolis Union Ry. Co.,* 32 Minn. 224, 20 N. W. 135; *West Chicago Street Ry. Co. v. City of Chicago,* 172 Ill. 198, 50 N. E. 185; *Conness v. Commonwealth,* 184 Mass. 541, 69 N. E. 341; *Holyhood Cemetery v. Inhabitants of Brookline,* 215 Mass. 255, 102 N. E. 340; *Nelson Theatre Co. v. Nelson,* 216 Mass. 30, 102 N. E. 926; *Lawton Rapid Transit Co. v. City of Lawton,* 31 Okl. 458, 122 Pac. 212; *Missouri Kansas-Texas Ry. Co. v. Rowe,* 77 Kan. 224, 94 Pac. 259, 15 L. R. A., N. S., 679, and note; *Colorado M. Ry. Co. v. Brown,* 15 Colo. 125, 25 Pac. 87; *Providence W. R. Co. v. City of Worcester,* 155 Mass. 35, 29 N. E. 56; *Wellington v. City of Cambridge,* 220 Mass. 312, 107 N. E. 976; *Five Tracts of Land v. United States,* 101 Fed. 661, 41 C. C. A. 850; note to *Sargent v. Inhabitants of Merrimac,* 196 Mass. 171, 124 Am. St. 528, 81 N. E. 970; *Brack v. Mayor and City Council of Baltimore,* 125 Md. 378, Ann. Cas. 1916E, at 880, 93 Atl. 994.)

It was not error to prove the returns from the operation of the lands in question as cattle ranches by the witnesses Bussell and Chester Brackett. (*Weyer v. Chicago W. & N. W. R. Co.,* 68 Wis. 180, 31 N. W. 710; *Haslip v. Wilmington & W. R. Co.,* 102 N. C. 376, 8 S. E. 926; *Hosmer v. Warner,* 15 Gray (Mass.), 46; *Kennebec District v. Waterville,* 97 Me. 185, 54 Atl. 6, 60 L. R. A. 856; *Gearhart v. Clear Springs Water Co.,* 202 Pa. St. 292, 51 Atl. 891; 5 Cyc. 735, and cases cited; *Stolze v. Manitowac Terminal Co.,* 100 Wis. 208, 75 N. W. 987; *Laflin v. Chicago W. N. R. Co.,* 33 Fed. 415.)

In condemnation proceedings a liberal rule is applied in the reception of evidence as to value. (13 Ency. of Evidence, 432, and cases cited.)

The great weight of modern authority justifies the trial court in allowing testimony, in dollars and cents, of value of lands for reservoir purposes. (*Snouffer v. Chicago & N. W. R. R. Co.,* 105 Iowa, 681, 75 N. W. 501; *Colo. M. Ry. Co. v. Brown, supra; National City Bank v. United States,*

275 Fed. 855; *Roberts v. Scurvin Ditch Co.*, 22 Colo. App. 120, 125 Pac. 552; *New York L. & W. Co. v. Junction Canal Co.*, 27 Hun (N. Y.), 116; *Portland & S. R. R. Co. v. Skamania Boom Co.*, 59 Wash. 191, 109 Pac. 814; *Boom Co. v. Patterson*, 98 U. S. 403, 25 L. ed. 206; *Seattle etc. Ry. v. Land*, 81 Wash. 206, 142 Pac. 680.)

Admission of testimony of engineers, even if improper, does not justify reversal of case if there is sufficient other competent evidence to sustain the verdict, and no abuse of discretion by trial judge. (*Seattle etc. Co. v. Murphine*, 4 Wash. 448, 30 Pac. 720; *Sanitary Dist. of Chicago v. Baumbach*, 270 Ill. 128, 110 N. E. 331; *Petersburg School District v. Peterson*, 14 N. D. 344, 103 N. W. 756.)

Admission by trial court of evidence of Bussell and Brackett as to gross revenue of ranch in past years was proper to show market value under the circumstances in this case. (*Weyer v. Chicago*, 68 Wis. 180, 31 N. W. 710; *Pegler v. Hyde Park*, 176 Mass. 101, 57 N. E. 322; *Stolze v. Manitowoc Terminal*, 100 Wis. 208, 75 N. W. 987; *Gerhart v. Clear Springs Water Co.*, 202 Pa. 292, 51 Atl. 891; *Avondale v. Cincinnati etc. Co.*, 10 Ohio Dec. Reprint, 82; *State v. Suffield etc. Co.*, 82 Conn. 460, 74 Atl. 775; *Columbia etc. Co. v. Giese*, 38 N. J. L. 39; *In re Davies*, 28 Ont. Law Rep. 544.)

McCARTHY, J.—Appellant is an irrigation company in Twin Falls county. By means of a reservoir it stores the waters of Cedar Creek and tributary streams. In the construction of the reservoir it became necessary to acquire by condemnation two parcels of land, one belonging to respondents Ira and Sarah Brackett, and the other to respondents Frank and Inez Clark. The Brackett lands comprise 320 acres, of which appellant sought to acquire 262.1. The Clark lands comprise 210 acres, of which appellant sought to acquire 108.8. This action is one for condemnation of these lands. The court having determined all the preliminary issues, the case was tried to a jury upon the single issue of the amount of damages to be awarded respondents.

Judgment upon the verdict was for respondents Brackett in the sum of $32,918, and for respondents Clark in the sum of $19,999. The appeal is from that portion of the judgment awarding damages.

Appellant assigns as error (1) the ruling of the court requiring witness Meredith, manager of appellant, to testify over objection as to what the dam would cost appellant, as to the price for which appellant was selling its water rights, as to the area of the reservoir, and as to the cost of the irrigation project; (2) the ruling of the court in permitting certain engineer witnesses to testify as to the market value of a reservoir site in Southern Idaho having a capacity of 27,000 acre feet of water and submerging 1,100 acres of land; (3) the ruling of the court in permitting certain witnesses to testify as to the returns from cattle ranches in southern Idaho of approximately the same size as the Brackett ranch.

C. S., sec. 7414, subdiv. 1, provides that the jury must ascertain and assess the value of the property sought to be condemned and all improvements thereon pertaining to the realty. This court has said:

"It was error for the court to admit evidence showing the value to the appellant of the land to be condemned, since such valuation is not based on the market value of the land but on the necessities of appellant.

"Compensation for the land taken in such cases must be reckoned from the standpoint of what the land owner loses by having his property taken and not from the benefit the property may be to the party desiring to take it, and it is error to admit evidence of the necessities of the condemnor and the value of the property to him for the purpose to which he intends to apply it." (*Rawson-Works Lumber Co. v. Richardson,* 26 Ida. 37, 141 Pac. 74.)

"In estimating the value of property taken for public use, it is the market value of the property which is to be considered, and the market value of property is the price which it will bring when it is offered for sale by one who

36 Idaho.—48

desires but is not obliged to sell it, and is bought by one who is not obliged to have the property. . . . .

"The constitution prohibits the taking of the property of another for any use until just compensation has been paid therefor, and this must be done whether the property has a market value or not. In every case, a fair and just compensation must be ascertained, and this should be done as nearly as possible in the same manner and by taking into consideration the same facts, circumstances and elements of value which would be taken into account by the vendor and purchaser if they were bargaining between themselves as to the fair price which the one would accept and the other would pay for the property." (*Idaho etc. Ry. Co. v. Columbia etc. Synod,* 20 Ida. 568, 119 Pac. 60, 38 L. R. A., N. S., 497. See, also, *Portneuf-Marsh etc. Co. v. Portneuf Irr. Co.,* 19 Ida. 483, 114 Pac. 19.)

The supreme court of the United States has held:

"In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted; that is to say, what is it worth from its availability for valuable uses? . . . . as a general thing we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future." (*Miss. & Rum River Boom Co. v. Patterson,* 93 U. S. 403, 25 L. ed. 206.)

Requiring the manager, Meredith, to testify to what the dam would cost the plaintiff company, the cost of the irrigation project, and the price for which appellant company was selling its water rights, was in violation of the rule announced by this court in *Rawson-Works Lmbr. Co. v. Richardson, supra,* in that it resulted in the introduction of evidence showing, not the value of what respondents would lose

by having their property taken from them, but rather the necessities of appellant, and the value of the property to it, for the purposes to which it intended to apply it. Nor can it be said that this was harmless error. Viewed in connection with all the other evidence, the evidence thus admitted was calculated to, and probably did, influence the action of the jury.

On the question of whether testimony such as that of the engineers is admissible, the authorities are in conflict. They seem to agree (1) that the owner is entitled to the market value of the land for the uses to which it may be most advantageously applied and for which it would bring the highest price in the market, (2) that any evidence should be admitted which legitimately bears upon the market value, (3) that where the property is especially suited for a certain purpose it is proper to take this into consideration in determining the market value. (*King v. Minneapolis Union Ry. Co.,* 32 Minn. 224, 20 N. W. 135; *Holyhood Cemetery Assn. v. Brookline,* 215 Mass. 255, 102 N. E. 340; *Currie v. Waverly & N. Y. B. R. Co.,* 52 N. J. L. 381, 19 Am. St. 452, 20 Atl. 56; *Alloway v. Nashville,* 88 Tenn. 510, 13 S. W. 123, 8 L. R. A. 123; *McKinney v. Nashville,* 102 Tenn. 131, 73 Am. St. 859, 52 S. W. 781; 10 R. C. L., pp. 128–131.) According to one line of authorities, while evidence that the land is valuable for a particular purpose is admissible, its money value for that purpose cannot be proved, but the evidence must be confined to proof of the general market value. (*Sacramento Southern R. Co. v. Heilbron,* 156 Cal. 408, 104 Pac. 979; *Revell v. City of Muskogee,* 36 Okl. 529, 129 Pac. 833; *Ham, Yearsley & Ryrie v. No. Pac. Ry. Co.,* 107 Wash. 378, 181 Pac. 898; *Sargent v. Merrimac,* 196 Mass. 171, 124 Am. St. 528, 81 N. E. 970; *McGroarty v. Lehigh Valley Coal Co.,* 212 Pa. 53, 61 Atl. 570; *Brown v. Forest Water Co.,* 213 Pa. 440, 62 Atl. 1078.) The reason for this holding is expressed as follows by the supreme court of California:

"It is seen, therefore, that this court by its latest utterances has definitely aligned itself with the great majority

of the courts in holding that damages must be measured by the market value of the land at the time it was taken, that the test is not the value for a special purpose, but the fair market value of the land in view of all the purposes to which it is naturally adapted; that, therefore, while evidence that it is 'valuable' for this or that or another purpose may always be given and should be freely received, the value in terms of money, the price, which one or another witness may think the land would bring for this or that or the other specific purpose is not admissible as an element in determining that market value, for such evidence opens wide the door to unlimited vagaries and speculations concerning problematical prices which might under possible contingencies be paid for the land, and distracts the mind of the jury from the single question—that of market value—the highest sum which the property is worth to persons generally, purchasing in the open market in consideration of the land's adaptability for any proven use.'' (*Sacramento So. Ry. Co. v. Heilbron, supra.*)

These authorities hold specifically that it is not permissible to show the money value of the land for the purpose for which it is being condemned, although the fact that it is valuable for that purpose may be considered as one element in arriving at its market value. (*Sargent v. Merrimac, supra;* authorities cited in the note to that case in 11 L. R. A., N. S., 996.) On the other hand, it has been held that the owner of the land may show its market value for the specific purpose for which it can be used most advantageously, or even the one for which it is sought to be condemned. (*Missouri etc. Ry. Co. v. Roe,* 77 Kan. 224, 94 Pac. 259, 15 L. R. A., N. S., 679; *Tracy v. Mt. Pleasant,* 165 Iowa, 435, 146 N. W. 78; *West Chicago St. Ry. Co. v. Chicago,* 173 Ill. 198, 50 N. E. 185; *Matter of New York, L. & W. R. Co.,* 27 Hun (N. Y.), 116. Cases cited in note to *Sargent v. Merrimac,* 124 Am. St., at p. 536.) In *Sargent v. Merrimac* the supreme court of Massachusetts held: ''The market value of land sought to be taken to supply water to a municipality is made up of the value of

the land in the market, apart from its special adaptability for water supply purposes, plus such sum as the purchaser would have added to that value because of the chance that the land in question might some day be used as a water supply''; and yet held that the land owner could not show the value of the land in dollars and cents for the special purpose in question. The author of the note in 124 Am. St. makes the following pertinent remarks in reference to this decision:

"If, as the court conceded, the land owner was entitled to the ordinary market value of the land, 'plus such sum as a purchaser would have added to that value because of the chance that the land in question might some day be used as a water supply,' then it seems to us that it was not only proper, but indispensable that evidence should be received showing whether the land was adapted for water supply purposes, and if so, whether that fact added to its market value, and what the probable addition was."

We think the decisions first above cited lay too much stress on the form of the question. If the land owner is entitled to the market value of his land, considered in the light of the highest and most advantageous use to which it can be put, then it follows logically that he ought to be allowed to show specifically the market value of the land for that purpose. This is the best way of proving the market value. The fear that permitting such evidence to be introduced would lead to the trial of collateral issues seems to us to be not well founded. Such a result would not be any more likely to follow in such case than in any case where market value is in question. The most sensible view of this matter that we have come across is expressed in a Washington case:

"Objection is next made to the competency of two witnesses called by the respondent on the question of damages. These witnesses were farmers who had lived in the vicinity of the land taken for nearly 30 years. They were fully competent to state the value of the land taken for agricultural purposes, and this was practically the only use made

of the property up to that time. The appellant contended that the land was chiefly valuable for booming purposes, and it insists that these witnesses were not competent to fix its value for such purposes. This may be conceded, but it might be said, on the other hand, that the witnesses who fixed the value of the land for booming purposes for the appellant did not know its value for agricultural purposes. The use for which the property taken was most valuable, as well as the measure of damages was in issue before the jury, and testimony . which would be competent in one aspect of the case might be utterly immaterial in another. If the jury should find that the land was chiefly valuable for booming purposes, .they would of course disregard testimony tending to show its value for agricultural purposes, and if they found it chiefly valuable for agricultural purposes, they would disregard the testimony tending to show its value for booming purposes. The witnesses were therefore competent to give testimony on a material issue in the case, and the objection to their competency was properly overruled.'' (*Portland & S. Ry. Co. v. Skamania Boom Co.,* 59 Wash. 191, 109 Pac. 814.)

We conclude that, if the land sought to be condemned is shown to have a special value for a specific purpose, the land owner may show whether it has a market value for that purpose, and, if so, what it is.

The question asked the engineer witnesses was, however, subject to further objections than the one just considered. It referred, not to the particular reservoir site, but to any reservoir site in southern Idaho of similar capacity and dimensions. We know of no decisions justifying such a question, and it seems to be contrary to the fundamental rules which are applied whenever it is sought to prove the market value of land. Many circumstances have a great bearing upon the value of land for a reservoir site, for instance: whether it is located near the center of population, or near a railroad, and the altitude, and fertility of the surrounding land or the land to be served. It would not have been error to have permitted the witnesses to state whether

or not the land in question had a market value as a reservoir site and, if so, what that value was. It was error to permit them to answer the question in the broad form in which it was asked and, in the very nature of things, we think it was prejudicial and therefore reversible error. The question is subject to still another objection, viz., that it presupposes a condemnation of a tract of 1,100 acres in a body, whereas the truth was that the land of respondents constituted but a part, and a small part, of the total area required for the reservoir. In this connection appellant has referred us to the opinion of the supreme court of the United States, *New York v. Sage,* 239 U. S. 57, 36 Sup. Ct. 25, 60 L. ed. 143, holding: "Compensation to the owner of one of the many parcels of land taken by eminent domain for a site for a reservoir for a municipal water supply should not include any part of an increase in value for that purpose due to its union with other parcels if such union would not have been practicable, or have been attempted, except by the intervention of eminent domain."

In amplification of this idea the court says: "The decisions appear to us to have made the principles plain. No doubt when this class of questions first arose it was said in a general way that adaptability to the purposes for which the land could be used most profitably was to be considered; and that is true. But it is to be considered only so far as the public would have considered it if the land had been offered for sale in the absence of the city's exercise of the power of eminent domain. The fact that the most profitable use could be made only in connection with other land is not conclusive against its being taken into account, if the union of properties necessary is so practicable that the possibility would affect the market price. But what the owner is entitled to is the value of the property taken, and that means what it fairly may be believed that a purchaser in fair market conditions would have given for it in fact,—not what a tribunal at a later date may think a purchaser would have been wise to give, nor a proportion of the advance due to its union with other lots. The city is

not to be made to pay for any part of what it has added to the land by thus uniting it with other lots, if that union would not have been practicable or have been attempted except by the intervention of eminent domain. Any rise in value before the taking, not caused by the expectation of that event, is to be allowed, but we repeat, it must be a rise in what a purchaser might be expected to give.''

The admission of evidence as to the market value of the land for a reservoir site should be qualified and limited to the extent indicated in that opinion. (See, also, *McGovern v. New York*, 239 U. S. 363, 33 Sup. Ct. 876, 57 L. ed. 1228, 46 L. R. A., N. S., 391.)

The last assignment of error is based upon the ruling of the court in admitting evidence as to the revenue ordinarily derived from cattle ranches in southern Idaho of approximately the same size and character as the Brackett ranch. The income which can be derived from a tract of land, when put to advantageous use and operated with ordinary skill has, of course, an important bearing upon its market value. The income, however, depends upon many things which are beyond the control of the owner and cannot be anticipated from year to year, such as the weather, the state of the market, and in this country, particularly, the extent and duration of the water supply. It also largely depends upon the ability and industry of those in charge. Influenced by these matters the income may fluctuate and vary from time to time. We think it would be proper to permit a witness, in stating the market value of land, to consider the average net income which it could be expected to produce under average conditions. Under no circumstances would it be proper to introduce evidence as to income from other ranches, this being altogether too remote. The objection to this class of evidence should have been sustained.

Respondents' counsel suggests that, even if the court erred in overruling the objections to the evidence above discussed, the error was harmless and not prejudicial. They point out that witnesses who testified to the market value

of the land as a stock ranch placed a value higher than that placed upon it by the engineers who testified to its value for a reservoir site. On the other hand, there was a conflict in the evidence as to its value for a stock ranch. Appellant's witnesses, who testified to the value of the land as a stock ranch, placed its value much lower than any of respondents' witnesses, either stockmen or engineers. In resolving the conflict between evidence properly admitted on behalf of appellants and respondents, the evidence erroneously admitted may have had, and probably did have, an influence with the jury. Its admission was therefore reversible error. Nor does the fact that the court gave correct instructions as to the measure of damages render harmless the errors in admitting evidence. Since the court admitted the evidence and refused to strike it, it was before the jury, and probably influenced the verdict.

That part of the judgment of the lower court which taxes costs in favor of the respondents is affirmed. (*Rawson-Works Lumber Co. v. Richardson* (on rehearing), 26 Ida. 37, at 46, 141 Pac. 74.) In other respects the judgment is reversed and the case remanded for a new trial in accordance with the views herein expressed.

On the authority of the opinion on petition for rehearing in *Portneuf-Marsh etc. Co. v. Portneuf Irr. Co.*, 19 Ida. 483, at 492, 114 Pac. 19, costs on appeal must be and are awarded to respondents.

Budge, C. J., and Dunn, J., concur.