619 P.2d 122

**CANYON VIEW IRRIGATION COMPANY, a corporation, Plaintiff–Appellant,**

v.

**TWIN FALLS CANAL COMPANY, a corporation, its Board of Directors, Jose Barinaga, Thomas Olmstead, Fay Frahm, William L. Watt and William Rude: and its Manager, Clifford Montgomery, Defendant–Respondents.**

No. 13174.

Supreme Court of Idaho.

Sept. 9, 1980.

Rehearing Denied Nov. 26, 1980.

John C. Hepworth, of Hepworth, Nungester & Felton, Buhl, for appellant.

Thomas G. Nelson, of Nelson, Rosholt, Robertson, Walker, Tolman & Tucker, Twin Falls, for respondents.

Paul M. Beeks, of Smith & Beeks, Twin Falls, amicus curiae.

Walker & Spink, Twin Falls, for amicus curiae Bell Rapids Mutual Irrigation Co.

BAKES, Justice.

In this case we address several significant questions presented by the attempt of one irrigation company to condemn a right to enlarge and use a portion of another irrigation company's existing canal system.

Plaintiff appellant Canyon View Irrigation Company (CV) and defendant respondent Twin Falls Canal Company (TFCC) are non–profit irrigation companies. TFCC currently operates canals on an easement granted to TFCC's predecessor by the State of Idaho pursuant to a 1903 contract. The easement runs through the property of a number of landowners who are not parties to this action but appear as amicus curiae. TFCC transports at times approximately 3,000 cfs of water through its canal.

CV has purchased, or is in the process of purchasing, approximately 300 cfs of Snake River water and seeks to put that water to beneficial use on land located west of TFCC's canal system. CV has no canal and there exists no natural waterway by which CV's water can be transported by gravity to its stockholders' lands. Therefore, CV seeks to divert its water from the Snake River into TFCC's canal system and then reclaim a like amount, with due allowance for seepage and evaporation, at a headgate closer to its irrigation project site. TFCC's existing canal system is apparently unable to accommodate CV's extra water. CV therefore proposes to improve, expand and enlarge the canal system where necessary. CV is willing to bear the entire expense of any such improvements. It is also willing to pay for its pro–rata share of the enlarged canal system's maintenance costs.

CV approached TFCC with this proposal, but TFCC refused to negotiate for the common use of the canal system. CV then commenced this action in the district court for declaratory relief. In its compliant, CV asked the court below to declare its right to proceed against TFCC in eminent domain by condemning a common right to use TFCC's canal system. Alternatively, CV claimed that its landowners had the right to become shareholders of TFCC as third party beneficiaries of the 1903 contract between TFCC's predecessor and the Idaho State Board of Land Commissioners.

The case was tried upon stipulated facts. The parties also presented a stipulated statement of issues to the court below. Besides the two main issues regarding eminent domain and the interpretation of the 1903 contract, the parties asked the district court to settle some legal questions in the event that it found CV was entitled to condemn an interest in the canal system. First, the parties wished to know what effect the condemnation suit would have on the various owners of land adjacent to TFCC's canal system. Second, the parties requested that the court determine the proper measure of damages in the event

CV's plan was implemented through condemnation proceedings.

The district court concluded that CV would not be entitled to the requested relief under either the law of eminent domain or the 1903 contract. While we agree that CV's shareholders do not enjoy any rights as third party beneficiaries under the contract, we conclude that CV can proceed by way of eminent domain, although the current state of the record precludes us from completely resolving all of the issues presented to the court below.

I

In order to assist owners of water rights whose lands are remote from the water source, the state has partially delegated its powers of eminent domain to private individuals. I.C. §§ 42–1102 and –1106. *See White v. Marty*, 97 Idaho 85, 540 P.2d 270 (1975). These statutes permit landlocked individuals to condemn a right of way through the lands of others for purposes of irrigation.

To condemn such a right of way, the water right owners must proceed under Idaho's law of eminent domain, found in I.C. §§ 7–701 *et seq.* Article 1, § 14, of the Idaho Constitution permits the power of eminent domain to be exercised only in furtherance of a "public use." The irrigation and reclamation of arid lands is a well recognized public use, Idaho Const. art. 1, § 14, and art. 15, § 1; I.C. § 7–701(3), even if the irrigation project is ostensibly intended to benefit only private individuals. *Clark v. Nash*, 198 U.S. 361, 25 S.Ct. 676 (1905), *affirming* 75 P. 371 (Utah 1904). "[Article 1, § 14, of the Idaho Constitution] confers the right to condemn for individual use on the theory that the development of individual property tends to the complete development of the entire state." *Codd v. McGoldrick Lumber Co.*, 48 Idaho 1, 10, 279 P. 298, 300 (1929).

Easements or rights of way are one type of property subject to condemna-

tion for a public use. I.C. § 7–702(2).[1] *See Hughes v. State*, 80 Idaho 286, 328 P.2d 397 (1958). Rights of way may also be condemned for the purposes of concurrent use in common with the existing owners. I.C. § 7–703(5);[2] *Portneuf Irrigating Co., Ltd. v. Budge*, 16 Idaho 116, 100 P. 1046 (1909). In such cases, the original easement owner is not really being deprived of his easement outright; only its exclusive use. The condemnation imposes a form of concurrent ownership. Both the condemnor and condemnee will enjoy the right to use the easement.

Generally, property already devoted to a public use, like TFCC's canal system, cannot be taken by eminent domain unless the condemnor proposes to put the property to a "more necessary public use." I.C. §§ 7–703(3) and –704(3).[3] However, the condemnor need not demonstrate a "more necessary public use" when condemning only the right to the common use of an existing right of way previously appropriated for public use. *Portneuf Irrigating Co., Ltd. v. Budge, supra; Marsh Mining Co. v. Inland Empire Mining & Milling Co.*, 30 Idaho 1, 165 P. 1128 (1916). Although the condemnation must still be "necessary" and must be accomplished in a "manner most compatible with the greatest public benefit and least private injury," I.C. § 7–703(5), absolute necessity is not required. It is enough if the taking is reasonably necessary. *Erickson v. Amoth*, 99 Idaho 907, 591 P.2d 1074 (1978); *March Mining Co. v. Inland Empire Mining & Milling Co., supra*. The party seeking to condemn an easement must show a more necessary public use only if the existing owner's use "will be defeated or seriously interfered with . . . ." *Marsh Mining Co. v. Inland Empire Mining & Milling Co.*, 30 Idaho at 12, 165 P. at 1130. Essentially, where the former owner's use is defeated or seriously impaired, the condemnation amounts to an outright taking rather than an appropriation of concurrent ownership, thereby triggering the greater necessity requirement found in I.C. §§ 7–703(3) and –704(3).

This is not a case of first impression. This Court had occasion to apply the same legal principles in *Portneuf Irrigating Co., Ltd. v. Budge*, 16 Idaho 116, 100 P. 1046 (1909) [hereinafter "Portneuf I"],[4] a case virtually identical to this one. The Portneuf–Marsh Valley Irrigation Co., Ltd., had commenced an action against the Portneuf Irrigating Co., Ltd., "whereby it sought to condemn sufficient of the [latter compa-

---

1. "7–702. ESTATES SUBJECT TO TAKING.–The following is a classification of the estates and rights in lands subject to be taken for public use:

   . . . . .

   "2. An easement, when taken for any other use. . . . ."

2. "7–703. PRIVATE PROPERTY SUBJECT TO TAKING.–The private property which may be taken under this chapter includes:

   . . . . .

   "5. All rights of way for any and all the purposes mentioned in section 7–701, and any and all structures and improvements thereon, and the lands held or used in connection therewith, shall be subject to be connected with, crossed or intersected by any other right of way or improvements or structures thereon. They shall also be subject to a limited use, in common with the owners thereof, when necessary, but such uses, crossings, intersections and connections shall be made in the manner most compatible with the greatest public benefit and least private injury.

   . . . . ."

3. "7–703. PRIVATE PROPERTY SUBJECT TO TAKING.–The private property which may be taken under this chapter includes:

   . . . . .

   "3. Property appropriated to public use; but such property shall not be taken unless for a more necessary public use than that to which it has been already appropriated.

   . . . ."

   "7–704. FACTS PREREQUISITE TO TAKING.–Before property can be taken it must appear:

   "1. That the use to which it is to be applied is a use authorized by law.

   "2. That the taking is necessary to such use.

   "3. If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."

4. The *Portneuf* case returned to this Court *sub. nom. Portneuf–Marsh Valley Irr. Co., Ltd. v. Portneuf Irrigating Co., Ltd.*, 19 Idaho 483, 114 P. 19 (1911) [hereinafter referred to as "Portneuf II"]. The *Portneuf II* appeal discussed the propriety of certain jury instructions regarding damages.

ny's] canal and right of way for the purpose of so enlarging a section of the canal as to not only carry the volume of water now owned and used by the [Portneuf Irrigating Company], but also such additional volume of water as will be necessary for the purpose of irrigating . . . land lying under the Portneuf–Marsh Valley Company's canals." *Id.* at 120, 100 P. at 1047. The potential condemnor sought to enlarge the canal considerably more than plaintiff does here. It also sought to commingle its waters with the waters of the other irrigation company, to be reclaimed downstream[5] for delivery to the irrigation site. The Portneuf Irrigating Company attempted to block the condemnation, arguing that the proposed use was not more necessary than the existing use of the canal. Conceding the point, the Court nevertheless approved of the condemnation.

"The question, however, arising in this case is not that of actually condemning [Portneuf Irrigating Co.'s] ditch and irrigation and water right, but it is rather an effort to condemn such of its right of way as is not being actually used as a canal for carrying water, so that the [Portneuf Irrigating Co.] may use that right of way in the construction of a larger canal through which [it] may continue to carry its water, ànd through which the Portneuf–Marsh Valley Company may also carry the water necessary for the irrigation of its lands. In other words, *it is proposed to so enlarge the present canal that it will do the service required for both companies. This principle has been repeatedly recognized in condemnation proceedings . . . .*" *Id.* at 132, 100 P. at 1052 (emphasis added).

*Portneuf I* is no legal aberration, nor is the concept there articulated a stranger to western water law. *See* 1 W. Hutchins, Water Rights Laws in the Nineteen Western States 281–82 (1971); 4 Waters & Water Rights § 341 (R. Clark ed. 1970) [hereinafter cited as "Water Rights"]. Virtually all of the western states have enact-

ed statutes providing that an individual may acquire the right to enlarge or to use an existing canal in common with the owners thereof, upon payment of proper compensation. Cal.Water Code § 1800 *et seq.* (West); Colo.Rev.Stat. § 37–86–107; N.M. Stat.Ann. §§ 72–1–5 and 75–5–15; N.D. Cent.Code §§ 61–01–04 and 61–01–05; Okl. Stat.Ann. tit. 82, §§ 105.3 & 105.4 (West); Or.Rev.Stat. § 772.310; S.D.Compiled Laws Ann. § 46–8–1; Utah Code Ann. §§ 73–1–6 & 73–1–7; Wash.Rev.Code Ann. § 90.03.- 040; Wyo.Stat. § 1–26–401.

■ Applying Idaho's eminent domain statutes and the *Portneuf I* rule to the stipulated facts of this case, we conclude that CV may condemn the right to enlarge and use the existing canal in common with TFCC. TFCC contends that CV's common use and expansion of the canal system would interfere with TFCC's existing use by increasing certain risks. For example, TFCC points to the problem of allocating water losses due to evaporation and seepage. TFCC also contends that increased canal base pressure may require certain capital improvements necessary to assure canal bank safety. TFCC also notes that it might have to pay greater insurance premiums to cover its increased exposure to lawsuits in the event of canal breakage. *See Brizendine v. Nampa Meridian Irr. Dist.*, 97 Idaho 580, 548 P.2d 80 (1976).

These problems are real, but not insurmountable. Competent engineering should solve many of the problems. Hydrologists can calculate water transmission losses with considerable accuracy. Primarily, however, we think that the additional risks to which TFCC will be exposed are more properly considered as elements of compensation. When the parties get to the compensation stage of the condemnation proceeding, the factfinder can put a price tag on these problems.

■ The issue of compensable damages must be distinguished from the question of

---

5. For purposes of convenience, the terms "downstream" and "upstream" will be used to describe the relative location of points in an

artificial watercourse even though strictly speaking the term "stream" is a misnomer.

whether the condemnee's existing use is defeated or seriously impaired. Certainly, any condemnation such as this will cause inconvenience, complications, and additional expense in the day–to–day operation of a canal system. The dispositive issue is not whether canal operation in general is interfered with, but whether TFCC's ability to deliver water to its shareholders is defeated or seriously interfered with. There is nothing in the record to suggest that a competently engineered enlargement of a portion of TFCC's canal system designed to accommodate an extra 300 cfs of water would render it unable to deliver water to its shareholders.

■■■ Since the record does not suggest that CV's enlargement and common use would displace, defeat or seriously impair TFCC's already existing public use of the canal system, CV need not establish a "more necessary public use." I.C. §§ 7–703(3) & –704(3); *Marsh Mining Co. v. Inland Empire Mining & Milling Co., supra; Portneuf Irrigating Co. v. Budge, supra.* As previously mentioned, only a showing of reasonable necessity is required. We think the record supports that showing.

■■■ The parties stipulated that "no natural waterway exists by which Canyon View's water can be transported by gravity from the Snake River to its stockholders' land." It seems clear that this fact, when considered in conjunction with the excessive cost of constructing a parallel canal system, would satisfy the necessity requirement. *See State ex rel. Ballard v. Superior Court, Kittitas County,* 195 P. 1051 (Wash.1921). There is no indication in the record that there exist suitable, feasible or less costly alternatives to the proposed concurrent use of TFCC's system. We also note that the construction of a new canal system would result in the substantially greater loss of private lands which CV would need to acquire to establish a new canal system. By permitting CV to condemn into TFCC's canal system, we think the right of eminent domain is exercised "in the manner most compatible with the greatest public benefit and least private injury," as required by I.C. § 7–703(5).

TFCC raises several other objections to CV's proposed condemnation. TFCC argues that CV really needs to acquire two so–called other rights in order to transport its water through the canal system: a right to compel TFCC to operate and maintain the canal system on CV's behalf and a right to exchange water with TFCC. TFCC maintains that neither of these rights can be acquired in a condemnation action.

As to the first, we have held CV may acquire a certain property interest by condemnation. This property interest is best described as the concurrent ownership of a right of way. Perhaps it is true that CV cannot compel TFCC to operate and maintain the canal on its behalf. But if that fact alone prevented CV from acquiring concurrent ownership of the right of way, the condemnation of rights of way in common with existing owners would be all but impossible. We are aware of no case where the right to enlarge and use an artificial watercourse was denied on that ground.

■■■ Basically, we view the post–condemnation relationship of CV and TFCC as a species of co–tenancy or tenancy in common. *See Moss v. Rose,* 27 Or. 595, 41 P. 666 (1895); 4 Water Rights § 341.2 (1970). Both parties have the right to the use of the canal right of way; neither can exclude the other. *See, e. g., In re Randall's Estate,* 64 Idaho 629, 132 P.2d 763 (1943). Other than introducing CV's 300 cfs of water into the enlarged canal at the point of diversion, there would be nothing for TFCC to do. The record indicates that CV will remove its water, less any transmission loss, at the end of TFCC's canal. Removal of the water will be CV's problem. If TFCC ever ceases to operate the canal for its own needs, then CV as co–tenant will have to assume that responsibility. The party who undertakes to operate the canal is entitled to a pro–rata contribution for operation and maintenance costs. I.C. § 42–1206; 3 Kinney on Irrigation & Water Rights § 1457 (2d ed. 1912). *See also* Cal.Water Code § 1782 (West); N.M.Stat.Ann. § 75–5–15; Utah Code Ann. § 73–1–7. As easement

co–tenants, both TFCC and CV would have a duty to the owners of the servient estate, i. e., the adjacent landowners, to maintain and repair the right of way. *Gibbens v. Weisshaupt*, 98 Idaho 633, 570 P.2d 870 (1977); *Rehwalt v. American Falls Reservoir Dist. No. 2*, 97 Idaho 634, 550 P.2d 137 (1976); *Suitts v. McMurtrey*, 97 Idaho 416, 546 P.2d 62 (1976).

TFCC also argues that CV's proposed common use is prohibited by its inability to legally compel TFCC to exchange water within the canal system. In support of this proposition, TFCC relies on I.C. § 42–105[6] and *Berg v. Twin Falls Canal Co.*, 36 Idaho 62, 213 P. 694 (1922). Because we hold that CV's proposals do not involve an "exchange" of water, but rather a "commingling", both I.C. § 42–105 and the *Berg* case are inapposite.

One commentator defines the practice of commingling as follows: "[W]ater appropriated out of one stream may be turned into the channel of another stream, mingled with the water already flowing there, and then reclaimed . . . ." 1 W. Hutchins, Water Rights Laws in the Nineteen Western States 603 (1971). Hutchins points out that an exchange differs from commingling, although the two concepts are closely related and may in some circumstances overlap. Essentially, commingling occurs when waters are mixed and later separated.

An exchange takes place when different waters are traded without being mixed. *See Almo Water Co. v. Darrington*, 95 Idaho 16, 501 P.2d 700 (1972); *In re Wilder Irrigation Dist.*, 64 Idaho 538, 136 P.2d 461 (1943); *Daniels v. Adair*, 38 Idaho 130, 220 P. 107 (1923); *Reno v. Richards*, 32 Idaho 1, 178 P. 81 (1918).

I.C. § 42–105 permits commingling of water. It also permits an exchange or substitution of water provided the parties to such exchange agree and obtain the approval of the Department of Water Resources. The section does not discuss commingling in canals. This omission is not significant. The co–tenant of a canal system must necessarily be able to commingle the waters with other co–tenants. If not, condemnation of concurrent ownership in a canal system would never be possible. It would not have been possible in *Portneuf I.* Were we to accept TFCC's argument, we would be forced to overrule *Portneuf I.*

We also think that the case of *Berg v. Twin Falls Canal Co.*, 36 Idaho 62, 213 P. 694 (1922), is inapplicable. *Berg's* plan was to divert TFCC water from the canal system at the upper end and replace it downstream with waste water which he had appropriated. *Berg* sought to condemn two points in the canal system: the point upstream where the water was diverted and

---

6. "42–105. USE OF NATURAL CHANNELS–MEASUREMENT OF COMMINGLED WATER–APPLICATION FOR RIGHT TO EXCHANGE WATER.–The water to which a person may be entitled by reason of valid permit or license issued by the department of water resources of water right heretofore established by diversion and application to beneficial use under the constitution of this state may be turned into the channel of another stream and mingled with its water, and then reclaimed; and water may be turned into any ditch, natural channel or waterway from reservoirs or other sources of water supply, and such water may be substituted or exchanged for an equal amount of water diverted from the stream, creek or river into which such water flows, or any tributary thereof, but in reclaiming the water so mingled, or diverting water in lieu thereof from any such stream, creek, river or tributary, the amount of water to which prior appropriators may be entitled shall not be diminished, and due allowance shall be made for loss by evaporation and seepage. Approval of any such exchange of water shall be obtained by filing application for permit to appropriate water under the provisions of section 42–202, Idaho Code, in the event the water to be exchanged is unappropriated public water, or by filing an application to exchange water as provided in this act in the event the water to be exchanged has been previously appropriated by the applicant under the constitution or statutes of this state. In no case, however, shall any such exchange of water be approved by the department of water resources until the department has received an agreement in form approved by the attorney general signed by the person proposing the exchange and each person or organization owning rights to water with whom such exchange is proposed to be made. Any such exchange of water hereafter made without the approval of the department of water resources as provided in this act shall be invalid."

the point further downstream where it was replaced. Thus, the Berg plan did not involve a commingling, as in *Portneuf I* and the instant case, but involved a true exchange within a system of artificial watercourses. The Court first observed that Berg "could condemn a right to use a portion of the system of [TFCC], if necessary, to convey a water appropriated by them to land upon which it was to be used." *Id.* at 65, 213 P. at 695. The Court specifically cited *Portneuf I* for this proposition. The Court further noted that Berg could "mix waters . . . in a natural water course for a similar purpose, " *id.*, citing the predecessor to I.C. § 42–105. The Court clearly did not view commingling as an impediment to a *Portneuf*-type condemnation. The Court concluded:

> "A right to such a use of the system cannot be acquired by a condemning of the right to use a small part of the Low Line Canal [downstream] for the purpose of turning the water of Rock Creek into it, and a small part of the main canal [upstream] for the purpose of taking out a like amount. Whether appellants could condemn a right to use the whole system for the purpose contemplated is not before us, and need not be decided." 36 Idaho at 66, 213 P. at 695.

We therefore conclude that CV can condemn a right to use a portion of the canal system in common with TFCC; in this respect, the law is the same as it was in 1909 when *Portneuf* was decided and in 1922 when *Berg* was decided. We think that conclusion is consistent with the well recognized policies in this state of maximum economic utility of water resources and the development and reclamation of arid lands. Nothing in the statutes or prior case law convinces us otherwise.

## II

Canyon View next contends that its shareholders have rights as third party beneficiaries under the 1903 contract between the state and Twin Falls Land & Water Co., TFCC's predecessor. The trial court held that CV had no rights under the 1903 contract. We affirm that ruling.

In the first paragraph of the contract, TFCC's predecessor agreed to construct a canal system and:

> "to sell shares of water rights in said canal system from time to time as hereinafter provided, to the persons filing upon the lands hereafter described, and *to the owners of other lands* not described herein but *which are susceptible of irrigation from this canal system* said shares of water rights to be sold on the terms herein provided . . . ." (Emphasis added.)

The question presented is whether CV's shareholders, as owners of lands "susceptible of irrigation from this canal system," are entitled to purchase shares in TFCC.

This question is answered by the second paragraph of the contract, which reads, in relevant part, as follows:

> "The main canals of this system shall have a carrying capacity *when completed* sufficient to deliver simultaneously one second foot of water to every eighty acres of land described in this contract, *together with all other lands susceptible of irrigation from said canals as nearly as the same can be estimated and agreed upon between the State Engineer and the Engineers* of the [Twin Falls Land & Water Co.]" (Emphasis added.)

In order to ascertain the intentions of contracting parties, the contract must be construed as a whole and considered in its entirety. *Beal v. Mars Larsen Ranch Corp., Inc.*, 99 Idaho 662, 586 P.2d 1378 (1978); *West v. Brenner*, 88 Idaho 44, 396 P.2d 115 (1964). Idaho recognizes the right of a third party to enforce a contract "made expressly for [his] benefit." I.C. § 29–102. However, absent a manifest intent to benefit the third party, courts are hesitant to enforce a contract on his behalf.

> " 'Thus, before recovery can be had by a third party beneficiary, it must be shown that the contract was made for his direct benefit, or as sometimes stated primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary. Furthermore, such a contract

must be strictly construed in favor of the person against whom such liability is asserted.'" *Dawson v. Eldredge*, 84 Idaho 331, 337, 372 P.2d 414, 418 (1962) *quoting Sachs v. Ohio Nat. Life Ins. Co.*, 148 F.2d 128, 131 (7th Cir. 1945).

*See also Just's, Inc. v. Arrington Constr. Co.*, 99 Idaho 462, 583 P.2d 997 (1978).

When the applicable portions of the first and second paragraphs are read together it seems clear that the right to transport water "to the owners of other lands . . susceptible of irrigation" is a right belonging to the irrigation company and not the landowners. The second paragraph specifically requires the agreement of the state engineer and the engineers of TFCC's predecessor. Nowhere does the contract state that the *completed* canal system must be expanded to accommodate a second operating water distribution organization. In fact, the eleventh paragraph of the contract entitles TFCC's predecessor to increase the appropriation of water and the capacity of the canal, but requires that such increase take place within five years from the date of the contract.

■ Construed together, these contract provisions indicate that TFCC's predecessor could extend the canal system to "other lands susceptible of irrigation." The contract does not, however, expressly extend any similar rights to third party landowners.

### III

The parties also asked the trial court to settle the following issue: what persons will be necessary and indispensable parties to a suit brought by Canyon View for the condemnation of a right to utilize TFCC's right of way?

We think it would be premature to resolve this issue at this stage of the controversy. Canyon View's proposals are still in an embryonic stage. The stipulation of facts submitted by the parties indicates only that Canyon View will need to enlarge some portions of the condemned section of the canal system, while other portions will need little or no alteration. However, the record does not contain any plans specifying the exact nature and location of any alterations. Therefore, at this stage of the controversy, there is no way of determining which of the adjoining landowners' property interests will be affected to such an extent that a taking will have occurred. *See Tibbs v. City of Sandpoint*, 100 Idaho 667, 603 P.2d 1001 (1979).

Other questions of a similar nature remain unanswered. The record does not clearly indicate the width of TFCC's right of way along the portions of the canal system sought to be condemned. That information might be required in order to determine whether Canyon View proposes to expand the canal outside of the physical boundaries of TFCC's present easement. Nor does the record reflect whether more flood easements need be acquired or whether the capacity of existing flood easements need be increased. It seems clear that these questions too cannot be resolved at this stage.

We recognize that the parties' primary concern in this proceeding was to determine whether Canyon View had a right to proceed at all, and for that reason they did not attempt to construct an exhaustive record. These questions should be resolved in the condemnation action itself.

### IV

■ The final question presented by this appeal concerns the proper measure of damages. As in other eminent domain actions, the condemnee is entitled to "just compensation" for the taking of his property. Idaho Const. art. I, § 14; I.C. § 7–711. For purposes of analysis, we think it best to segregate the compensable damages into three categories: construction or enlargement costs; damages for prospective interference; and the value of the loss of exclusive use.

Canyon View readily admits its liability for the construction costs, as well as "any damages caused by interfering with the operation of the canal during the period of construction." It may be that the parties

will find it to be in both their interests to have CV agree to pay these costs as they accrue rather than attempt to estimate these costs at the trial of the condemnation action. The trial court may also find that damages caused by interference during the period of construction may be best handled by requiring Canyon View to furnish a bond during this period. In any event, there is no issue raised on appeal as to these items as damages.

Canyon View does not, however, admit liability for any prospective damages inherent in the proposed joint use of the canal system. When an easement owner loses the exclusive right to use his easement, he may well be damaged by the prospective future interference with his use, even if such interference does not prevent or seriously impair his enjoyment of the easement. For example, TFCC complains that its exposure to lawsuits in the event of canal breakage or similar misfortune is significantly increased by virtue of an increase in the number of farmers dependent on TFCC's operation of the canal system and the larger volume of water which might escape. If proven, that increase in exposure is compensable, and may manifest itself in the form of increased insurance premiums. Similarly, TFCC may have to acquire flood easements of a greater capacity. If proven, the cost of that acquisition is also compensable. These are but two examples of prospective costs of administration that TFCC might be required to bear as a result of CV's concurrent use of its right of way.

The above category of damages was recognized by this Court when the *Portneuf* case was appealed for the second time. *Portneuf–Marsh Valley Irr. Co., Ltd. v. Portneuf Irrigating Co., Ltd.*, 19 Idaho 483, 114 P. 19 (1911). In *Portneuf II*, the Court addressed the propriety of a jury instruction on compensation. The Court approved of an instruction that required the jury to include "all damages, present and prospec-tive, that are the natural or reasonable incident of the improvement made or the work to be constructed . . . ." *Id.* at 487, 114 P. at 19.[7]

The third category of compensation concerns the damages due to TFCC's loss of the right to exclusive use of the right of way. As a general rule, damages for the taking of an interest in property are measured by the fair market value of the property taken plus severance damages to any remainder. *State v. Dunclick, Inc.*, 77 Idaho 45, 286 P.2d 1112 (1955); *Idaho Farm Development Co. v. Brackett*, 36 Idaho 748, 213 P. 696 (1923). *See generally*, 4 Nichols on Eminent Domain § 12.1 (1977). As the *Portneuf II* Court realized, however, conventional approaches to market value assessment are of little use in a condemnation case where the interest acquired is the concurrent use of an already existing canal system. The parties themselves came to a similar conclusion in their stipulation of facts, having agreed that the TFCC canal has no market value in the usual sense.

TFCC contends that "the damage for the loss of the exclusive right of TFCC ought to be measured by the benefit to Canyon View." TFCC maintains that this benefit should include an appropriate percentage of today's cost of its canal system. We disagree. In *Portneuf II*, the Court rejected the measure of damages proposed here by TFCC. "Compensation must be reckoned from the standpoint of what the landowner loses by having his property taken, not by the benefit which the property may be to the other party to the proceedings . . . ." *Id.* 19 Idaho at 488, 114 P. at 20 (quoting secondary authority). On this ground, the *Portneuf II* Court held it was error to instruct the jury that damages should include the amount saved by the condemnor by reason of the existence of the condemnee's canal system. Therefore, TFCC is not entitled to damages based upon

7. In a similar case, *Tanner v. Provo Bench Canal & Irr. Co.*, 40 Utah 105, 121 P. 584 (1911), aff'd 239 U.S. 323, 36 S.Ct. 101, 60 L.Ed. 307 (1915), the trial court ordered the condemning party to furnish a perpetual bond to insure payment of future expenses incurred as a result of the enlargement and subsequent concurrent use. We think that is an appropriate remedy available to the trial court.

what CV will save by condemning into TFCC's canal rather than constructing an entire new canal system.

█ Similarly, CV should not have to pay a proportionate part of the depreciated historical cost of constructing TFCC's existing canal system, since TFCC is not being deprived of the existing canal system. In view of the fact that TFCC will retain the right to use the canal system as before, we think TFCC is entitled to only nominal damages for the property interest acquired by CV. *Salt Lake City v. East Jordan Irr. Co.*, 121 P. 592 (Utah 1911); *Tanner v. Provo Bench Canal & Irr. Co.*, 40 Utah 105, 121 P. 584 (1911), aff'd 239 U.S. 323, 36 S.Ct. 101, 60 L.Ed. 307 (1915). *See City of Lewiston v. Brinton*, 41 Idaho 317, 239 P. 738 (1925); 4 Nichols on Eminent Domain § 12.41[1] at 734–36 (1977).

The judgment of the district court is hereby reversed in part and affirmed in part, and remanded for further proceedings consistent with this opinion.

DONALDSON, C. J., and McFADDEN, J., concur.

BISTLINE, Justice, dissenting.

The gist of this "controversy" is found in the fifth paragraph of the Court's opinion. There the Court states that the parties brought the suit because they "wished to know the effect the condemnation suit [which *might* be brought] would have on various owners of land adjacent to Twin Falls Canal Company's canal system," and wanted to be advised in advance of "the proper measure of damages in the event Canyon View's plan was implemented through condemnation proceedings."

That the appeal should be dismissed is self–evident. The district court should not have entertained the action in the first place. That neither of the parties raises the nonjusticiability of the controversy does not mean that the trial court was obligated to render what can only be considered a strictly advisory opinion. Every question put to the Court could and would necessarily be resolved in a condemnation action, had one been brought. But until such an action is brought, the courts of this state are not empowered to render purely advisory opinions. That the questions are important, and the answering thereof might well serve to aid in bringing the parties together so that they can resolve their differences without going to court in a truly adversary proceeding, is insufficient to confer jurisdiction upon the courts. *Thomas v. Riggs*, 67 Idaho 223, 175 P.2d 404 (1946); *Miller v. State Board of Education*, 56 Idaho 210, 52 P.2d 141 (1935).

The parties here may be unable to agree, but they are not presently caught up in any controversy. As with any other potential litigants, where they are unable to resolve their different views and enter into a contract, legal advice is available elsewhere than from the courts. If still unable to agree, and if Canyon View decides to test out its right to condemn against Twin Falls Canal Company, the applicable statutes are as available to guide it, and the courts as open to receive it, as for any other person or entity.[1]

In *Wood v. Class A School District No. 25*, 78 Idaho 75, 298 P.2d 383 (1956), Justice Taylor in writing for a unanimous Court quoted Chief Justice Hughes' language in *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937) for the proposition that a "controversy" in the constitutional sense "must be one that is appro-

---

1. In recent months other parties with problems have gone into the courts for resolution, proceeded through trials, and presented their appellate briefs in this Court — only to be finally told that their actions and appeals were dismissed as improperly brought or taken. *Winn v. Winn*, 101 Idaho 270, 611 P.2d 1055 (1980); *Revello v. Revello*, 100 Idaho 829, 606 P.2d 933 (1980); *Pichon v. Broekemeier*, 99 Idaho 598, 586 P.2d 1042 (1978).

In each of those cases the parties were properly in this Court seeking final resolutions to truly adversary proceedings already litigated and determined in district court. Here, by contrast, unless Canyon View initiates a condemnation action, time of the district court and this Court will have been expended in fruitless endeavor. It is difficult for me to reconcile our acceptance of this case with our refusal to consider the merits in those above mentioned.

priate for judicial determination. . . . A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot." 78 Idaho at 78, 298 P.2d at 385. Justice Taylor then went on to say:

"It follows that the controversy must be one that is real and substantial, and if the complaint fails to disclose some legal interest in the plaintiff, no justiciable controversy is presented for defense." *Id.*

Recently, after stating that there should be some delineation of the rule that a declaratory judgment action cannot be used to secure an advisory opinion, the Wyoming Supreme Court in *Cranston v. Thompson*, 530 P.2d 726 (1975), adopted two statements from the courts of Kansas and Tennessee:

" ' * * * Courts will not render advisory opinions on abstract questions of law about which there is only a disagreement rather than an actual controversy between the parties. * * * ' *Wagner v. Mahaffey*, 195 Kan. 586, 408 P.2d 602, 605.

" 'The Declaratory Judgments Act gives courts no power to determine future rights or controversies in anticipation of events that have not occurred * * * .' *Glasgow v. Fox*, 214 Tenn. 656, 383 S.W.2d 9, 13." 530 P.2d at 728–29.

The Arizona Supreme Court, in *Moore v. Bolin*, 70 Ariz. 354, 355, 220 P.2d 850, 851 (1950), similarly said, quoting from 16 Am. Jur. *Declaratory Judgments* § 9 at 282 (1950):

"It is well settled that a proceeding for a declaratory judgment must be based upon an actual controversy. . . . No proceeding lies under the declaratory judgment acts to obtain a judgment which is merely advisory or answers a moot or abstract question."

That court proceeded to quote with approval from an annotation at 87 A.L.R. 1205 at 1215 (1933):

" 'A declaratory relief statute only justifies a declaration of rights upon an existing state of facts, not one upon a state of facts which may or may not arise in the future. Nor will future rights be determined in anticipation of an event that may never happen. * * * '

"The writer of the note cites many cases sustaining the general rule as stated, supra, when declaratory relief is sought as to facts involving future events, and in the same note as to facts involving contingent events." 220 P.2d at 852.

Concluding, the Arizona court held:

"It is the court's view that the facts pleaded by appellant do not show a present existing controversy which permits the court to adjudicate any present rights. The allegations merely show an intent to do certain things in the future all of which are dependent upon future events and contingencies within control of the appellant." *Id.*

Obviously Canyon View's promotion will be vastly aided if it can pursue its program armed with a judicial decree spelling out *in advance* its rights as against Twin Falls Canal Company. But it is for attorneys—not the courts—to oblige Canyon View with that advice, especially in the form of a Supreme Court opinion with apparent res judicata effect against Twin Falls Canal Company and its members and shareholders. The United States Court of Appeals for the District of Columbia, in *Helco Products v. McNutt*, 137 F.2d 681 (D.C. Cir. 1943), in speaking of the use of advisory judicial opinions by private business, observed:

"Much of the uncertainty of business management could, perhaps, thus be eliminated. What a comfort it would be, if a declaratory judgment could be made as available as an interoffice memorandum, whenever a board of directors meets to consider a proposed new venture. But that millennium has not yet arrived." 137 F.2d at 684.

I do join the Court in making proper obeisance to the decision heralding the arrival of that millennium.

DUNLAP, J., pro tem., concurs.